**Kim Curtis DANNER,
Petitioner-Appellant,**

v.

**UNITED STATES of America,
Respondent-Appellee.**

No. 86–7127.

United States Court of Appeals,
Eleventh Circuit.

July 6, 1987.

---

James L. O'Kelley, Birmingham, Ala., for petitioner-appellant.

Frank W. Donaldson, U.S. Atty., Bill L. Barnett, Robert J. McLean, John E. Ott, Asst. U.S. Attys., Birmingham, Ala., for respondent-appellee.

Before HILL and JOHNSON, Circuit Judges, and ESCHBACH [*], Senior Circuit Judge.

HILL, Circuit Judge:

Appellant Kim Curtis Danner was convicted in federal district court on four drug-related counts involving violations of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 2. After his convictions were affirmed on appeal, Danner filed this habeas corpus petition under 28 U.S.C. § 2255, alleging that his trial counsel was ineffective because he labored under an actual conflict of interest. The magistrate conducted an evidentiary hearing on Danner's claim, and recommended that relief be denied. After again referring the matter to the magistrate to make certain additional credibility findings, the district court adopted the magistrate's recommendation and denied the writ. We agree that Danner received

---

[*] Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

adequate representation by his trial counsel and therefore affirm.

## FACTS

This case presents a somewhat bizarre and convoluted series of financial transactions leading to Danner's ultimate representation at trial; therefore, we will delineate the facts in some detail. Danner and codefendant William Pruitt were arrested and jailed in Huntsville, Alabama on the afternoon of April 7, 1984. Danner and Pruitt were contacted either later that evening or the following morning by Mark McDaniel, an attorney who had represented both individuals in the past. This initial contact by McDaniel was apparently unsolicited. Danner indicated that he wanted McDaniel to represented him, and McDaniel agreed to do so for a fee of $25,000. McDaniel informed Danner at this time that he would be representing Pruitt as well, but for a much higher fee.

Danner initially told McDaniel that he could not afford a fee of $25,000, but Pruitt, who also was present during these discussions, indicated that he would pay a portion of Danner's legal fees on the condition that Danner use McDaniel as his counsel. Danner finally agreed on the fee and executed a written retainer agreement, which provided that Danner would pay McDaniel's firm the sum of $25,000 for the purpose of "assuring our availability in your matter." Danner claims that McDaniel assured him that this fee would include representation through trial and "all the way to the Supreme Court, if necessary." Danner received a total of $10,000 from Pruitt, which he paid directly to McDaniel. Danner sold his car and boat to raise additional money for McDaniel's fee, and ultimately made payments to McDaniel totaling $21,000.

Several weeks later, McDaniel determined that there existed the possibility of conflicting interests between Danner and Pruitt, and he presented Danner with an addendum to the retainer agreement. This addendum pointed out that McDaniel was employed to represent both Danner and his codefendants, William and Bobbie Jean Pruitt. It further stated that because of their potentially conflicting interests, McDaniel deemed it advisable to refer each party to separate counsel for trial of the case, and that McDaniel's representation would be limited to pretrial motions and appeals. The addendum also provided that McDaniel would not involve himself with the trial tactics, trial testimony, witnesses, or other evidentiary matters of any party.[1] After discussing the matter with McDaniel, Danner signed this addendum.

Shortly thereafter, McDaniel directed Danner to contact Steve Salter, a Birmingham criminal defense attorney, and arranged for David Johnson, a Birmingham attorney and law professor, to represent Pruitt. Salter met with Danner but could not accept his case because of a pending commitment. Several days later, McDaniel referred Danner to Tommy Nail, another Birmingham defense attorney, who agreed to accept the case for a fee of $5,000. Nail never discussed payment of his fee with Danner; he received a check for the full amount directly from the account of David Johnson. Johnson presumably received this money from the retainer paid by Danner to McDaniel. Although Nail's total fee was only $5,000, McDaniel never returned

---

1. The relevant portion of the addendum reads as follows:

   Because of the possibility of potentially differing interests between you and Mr. and Mrs. Pruitt, I deemed it advisable to refer each of you to separate counsel in Birmingham to pursue the trial aspects of this case. That decision was based not upon an actual conflict but rather that such a conflict at some time might arise.

   . . . .

   I shall represent each of you in proceedings involving establishment of bail bonds [Danner was already out on bond at the time this addendum was prepared], pretrial motions, and upon appeal, should that become necessary. I cannot and shall not advise Mr. Pruitt, Mrs. Pruitt, or yourself concerning any matter of trial tactics, trial testimony, witnesses, or other evidentiary matters. My involvement in pretrial matters is to preserve those issues for any future appeal. I wish to emphasize that my entire involvement in the pretrial stage of your case will be premised upon approval of your trial counsel.

any part of the balance of Danner's $21,000 retainer.[2]

Nail had several discussions with Danner concerning trial strategy and the possibility of a negotiated plea, but Nail was unable to work out a satisfactory plea agreement with the government. Nail also filed a motion for severance, which was denied by the district court. Nail and Johnson conducted a cooperative defense effort in preparing and trying the case, including exchanging information on witnesses. Danner indicated during pretrial preparations that he desired to testify in his own defense at trial, but Nail strongly recommended against such a move for tactical reasons. Danner also discussed with Nail his desire to testify at various times during the trial. Late in the trial, however, government attorneys informed Nail that should Danner take the stand, they would offer rebuttal witnesses who would testify to a shooting and assault allegedly perpetrated by Danner related to the drug charges. The government attorneys also informed Nail that they would cross-examine Danner regarding drug records found at Pruitt's house which contained aliases used by Danner. After being confronted with the presence of the two rebuttal witnesses at the courthouse on the last day of trial, Danner declined to take the stand. Danner was convicted on four of the ten counts originally charged, and was sentenced to 15 years imprisonment and a $25,000 fine.

## DISCUSSION

Danner argues in this appeal that the sequence of transactions involving his codefendant Pruitt and the respective attorneys establishes that his counsel, Tommy Nail, was laboring under an actual conflict of interest at trial. He claims that Pruitt and McDaniel conspired to compromise his interests in order to provide Pruitt with a better defense, and that Nail's loyalties were divided because his fee for representing Danner was paid by Johnson, who was Pruitt's counsel. Danner asserts that this conflict of interest influenced Nail's recommendation that Danner not testify in his own defense, because his testimony allegedly would have been adverse to Pruitt's case.

█ The proper standard for reviewing a claim of ineffective assistance of counsel based upon an alleged conflict of interest was articulated by the Supreme Court in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). To establish a viable sixth amendment claim, the petitioner "must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719. A petitioner who shows a conflict which actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. *Id.* In other words, in the case of an actual conflict, prejudice is presumed. *Barham v. United States*, 724 F.2d 1529, 1531 (11th Cir.), *cert. denied*, 467 U.S. 1230, 104 S.Ct. 2687, 81 L.Ed.2d 882 (1984); *Baty v. Balkcom*, 661 F.2d 391, 396 (5th Cir. Unit B 1981),[3] *cert. denied*, 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982). The Supreme Court has cautioned, however, that the mere possibility of a conflict does not rise to the level of a sixth amendment violation, and therefore "is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719. To demonstrate an actual conflict of interest, the petitioner must be able to point to specific instances in the record which suggest an impairment or compromise of his interests for the benefit of another party. *See Oliver v. Wainwright*, 782 F.2d 1521, 1524–25 (11th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 313, 93 L.Ed.2d 287 (1986); *United States v. Mers*, 701 F.2d 1321, 1328 (11th Cir.), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983).

█ We agree with the district court that Danner has failed to establish an actu-

---

2. The only explanation given by McDaniel for his failure to account for the balance of the retainer fee was that he and his partners felt that they had earned that sum of money by securing Danner's release on bond. Report and Recommendation of the Magistrate at 6–7.

3. This circuit has adopted as precedent all decisions of Unit B of the former Fifth Circuit. *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982).

al conflict of interest in this case. As an initial matter, we note that the proper focus of our inquiry is the conduct and performance of Tommy Nail, Danner's actual trial counsel, not the admittedly questionable conduct of McDaniel. That McDaniel arguably failed to give Danner his money's worth and referred his case to another attorney is not dispositive of Danner's sixth amendment claim. In fact, McDaniel's referrals insured that both Danner and Pruitt would be represented at trial by separate counsel. Moreover, the fact that Nail's fee was paid by Johnson from funds originally paid by Danner to McDaniel is not sufficient to establish an actual conflict of interest which impaired Nail's representation. Despite the unusual nature of these monetary transactions, the district court and the magistrate correctly concluded that Nail provided Danner with adequate representation, free from any real conflict of interest which adversely affected his performance.

█ Danner relies heavily upon Nail's advice that he not testify at trial as evidence of his counsel's conflicting interests. In our view, however, counsel's recommendation cannot be considered as evidence of a conflict, but rather as an indication that Nail was conscientiously guarding his client's interests. Given the rebuttal evidence which the government was prepared to introduce had Danner taken the stand, Nail's recommendation appears to have been a good, or at least acceptable, tactical decision. Moreover, the magistrate specifically found that Nail fully explained to Danner the risks of his taking the stand in his own defense, and that after considering his counsel's explanation, Danner himself

made the decision not to testify. These findings are amply supported by the record. Faced with the prospect of allowing in such damning additional evidence, Danner apparently realized that the better course was that recommended by his counsel.[4]

In sum, Danner has pointed to no specific instances suggesting that Nail compromised his defense in order to foster Pruitt's case. *See Oliver*, 782 F.2d at 1524–25. Although McDaniel's conduct may appear somewhat suspect, our review of the record indicates that *Nail's* performance at trial was clearly sufficient and that he represented Danner free from any actual conflict of interest. Accordingly, the judgment of the district court denying the writ is AFFIRMED.

---

4. This is not a situation where the defendant's will was "overborne" by his counsel, as was found in *United States v. Butts*, 630 F.Supp. 1145 (D.Me.1986). In *Butts*, the court held that defense counsel's flagrant disregard of the defendant's persistent desire to testify was so fundamentally wrong that such conduct could never be considered harmless error. *Id.* at 1148. The court concluded that the normal standard for assessing ineffectiveness announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) should not apply in such a case because "ineffective assistance of counsel which results in a deprivation of the defendant's right to testify transcends conventional Sixth Amendment analysis and ... prejudice is sufficiently proven, if not to be presumed from, the resulting denial of the defendant's right to testify." *Id.* at 1149. There is no evidence in the present case, however, that Nail blatantly disregarded Danner's desire to testify. To the contrary, Nail had several discussions with Danner about this issue, and counsel fully explained the consequences of such a decision. Moreover, the magistrate specifically found that based upon his counsel's explanation, Danner himself made the decision not to testify. Thus, the facts of this case are plainly distinguishable from *Butts*, and we express no opinion concerning the acceptance of that court's rationale in this circuit.