USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1472 GEORGE M. BUCUVALAS, Petitioner - Appellant, v. UNITED STATES OF AMERICA, Respondent - Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ and Tauro,* District Judge. ______________ _____________________ Valeriano Diviacchi for appellant. ___________________ Carole S. Schwartz, Assistant United States Attorney, with __________________ whom Donald K. Stern, United States Attorney, was on brief for _______________ appellee. ____________________ October 28, 1996 ____________________  ____________________ * Chief Judge of the District of Massachusetts, sitting by designation. TAURO, Chief District Judge. Appellant George TAURO, Chief District Judge. _______________________ Bucuvalas appeals the District Court's denial of his petition to vacate his sentence made pursuant to 28 U.S.C. 2255. Essentially, Bucuvalas asserts that his Sixth Amendment right to effective assistance of counsel was violated because his attorney's fees were paid by his co-defendants and because his attorney advised him not to testify on his own behalf. I. I. Background Background __________ On February 15, 1989, George Bucuvalas was indicted in the District of Massachusetts for participating in, and conspiring to participate in, a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1962(c)-(d), for mail fraud in violation of 18 U.S.C. 1341 and 1342, and for conspiracy to commit mail fraud in violation of 18 U.S.C. 371. His employers -- Arthur Venios, Christy Venios, and Bel-Art Realty, Inc. ("Bel- Art") -- were indicted for the same offenses. The Venios' and Bel-Art retained attorney Morris Goldings to represent them at trial. Bucuvalas subsequently sought to retain Goldings as well. Goldings was not willing, however, to represent both Bucuvalas and his co-defendants. He, therefore, referred Bucuvalas to Attorney Terry Segal, whom Bucuvalas had retained on past occasions. Segal represented Bucuvalas in a criminal tax investigation which did not result in an indictment and in a trial for bribery which resulted in a -2- split verdict. Apparently satisfied with Segal's past representation, Bucuvalas took Goldings' advice and retained Segal to represent him with respect to the present charges. On prior occasions, Bucuvalas' co-defendants, the Venios' and Bel-Art, had paid Bucuvalas' legal fees. In keeping with this practice, Bucuvalas arranged for them to pay Segal's fee in the current matter. Upon retaining Segal, Bucuvalas apprised Segal that he would be paid by Bucuvalas' co-defendants. Goldings was also aware of the payment plan. Judge Woodlock, the district judge to whom the case was assigned, was never informed of the arrangement. Segal took the case to trial. He adopted a strategy in which he sought to portray Bucuvalas as a low-level employee who was merely following his employers' orders and who lacked knowledge of any wrongdoing. As part of his strategy, Segal recommended that Bucuvalas not testify at trial. Segal feared that the government's cross-examination of Bucuvalas would undermine Bucuvalas' defense. In particular, Segal feared that the government's cross-examination would reveal a prior conviction on similar charges and would elicit admissions to several of the current charges. Segal was concerned that this would draw attention away from weaknesses in the government's case and focus it instead on Bucuvalas' credibility. Bucuvalas agreed with Segal's analysis and chose not to testify. -3- On August 16, 1990, Bucuvalas and his co-defendants were convicted on all counts of the indictment. Judge Woodlock sentenced Bucuvalas to fifty-one months in prison followed by three years of supervised release. This court upheld his conviction on appeal. United States v. Bucuvalas, 970 F.2d 937 _____________ _________ (1st Cir. 1992), cert. denied, 507 U.S. 959 (1993). _____ ______ On November 25, 1994, Bucuvalas moved to vacate his sentence, pursuant to 28 U.S.C. 2255, asserting violations of his Sixth Amendment right to effective assistance of counsel. He claimed that his rights were violated in two respects. First, he argued that the payment of his attorney's fees by his co- defendants created an unconstitutional conflict of interest under Cuyler v. Sullivan, 446 U.S. 335 (1980). In particular, ______ ________ Bucuvalas claimed that the fee arrangement influenced Segal's recommendation that Bucuvalas not testify, because Bucuvalas' testimony would have shown that his co-defendants orchestrated the wrongdoing and would have thereby incriminated the very persons paying Segal's fees. Second, Bucuvalas claimed that Segal's trial performance was deficient under Strickland v. Washington, 466 __________ __________ U.S. 668 (1984). Bucuvalas alleged that Segal's treatment of the fee arrangement was deficient, because he neither warned Bucuvalas of the risks inherent in the payment scheme, nor disclosed the arrangement to the trial court. Bucuvalas also argued that Segal's advice that he not testify was deficient because his testimony would have been exculpatory. Bucuvalas -4- claims that it would have demonstrated that he was merely following orders and that he lacked knowledge of any wrongdoing. On March 4, 1996, Judge Woodlock held an evidentiary hearing. He found that the fee arrangement did not create an unconstitutional conflict of interest and that Segal's performance was not, in any respect, deficient under the Sixth Amendment. Bucuvalas' petition, therefore, was denied. II. II. Analysis Analysis ________ Bucuvalas appeals the district court's rulings regarding both his Cuyler and Strickland claims. We examine each ______ __________ seriatim. ________ A. The Cuyler Claim A. The Cuyler Claim ________________ Bucuvalas claims that the payment of his attorney's fees by his co-defendants created an unconstitutional conflict of interest. As a threshold matter, he asserts that under United ______ States v. Foster, 469 F.2d 1 (1st Cir. 1972), the government ______ ______ bears the burden of persuasion on the issue, because the alleged conflict of interest was never addressed at trial by the district court. 1. Foster and the Burden of Persuasion 1. Foster and the Burden of Persuasion ___________________________________ When the defendant fails to object to an alleged conflict of interest, the defendant bears the burden of proving that the alleged conflict violates the Sixth Amendment. United ______ -5- States v. Soldevila-L pez, 17 F.3d 480, 486 (1st Cir. 1994) ______ _______________ (citing Cuyler, 446 U.S. at 348). ______ ______ Pursuant to our supervisory powers, this court has carved out a limited exception to this rule. Foster, 469 F.2d at ______ 4. In Foster, we held that district courts are required to ______ intervene, sua sponte, when one lawyer represents multiple co- ___ ______ defendants. Id. In particular, Foster requires that district ___ ______ courts apprise defendants of the risks associated with multiple representation and of their right to a court-appointed attorney if necessary to avoid the multiple representation. Id. at 5. If ___ a court fails to conduct an adequate inquiry, Foster instructs ______ that the burden of persuasion shifts to the government to disprove an alleged conflict of interest, given an appeal or collateral attack. Id. This rule seeks to address the ___ heightened danger of prejudice inherent in multiple representation. Id. at 4. ___ Bucuvalas argues that he was entitled to a Foster ______ hearing. Though he did not share an attorney with his co- defendants, Bucuvalas claims that the fee arrangement indirectly implicated the same concerns as multiple representation, because it subjected his attorney to the influence of his co-defendants. Since the district court did not inquire into his attorney's fee arrangement, Bucuvalas argues that Foster shifts the burden to ______ the government. We reject Bucuvalas' argument and decline to extend Foster to these facts. The Foster rule is narrow. See Brien v. ______ ______ ___ _____ -6- United States, 695 F.2d 10, 14 (1st Cir. 1982) (refusing to ______________ extend Foster and impose broader duty on district courts). By ______ its own terms, Foster only applies to "criminal prosecutions ______ where one attorney speaks for two or more defendants." Id. This ___ case, therefore, does not come within the scope of Foster, ______ because there was no multiple representation. Segal represented Bucuvalas and no one else. Moreover, Segal's fee arrangement does not foster the same risks as multiple representation. While we recognize "the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party," Wood v. ____ Georgia, 450 U.S. 261, 268-69 (1981), these dangers are different _______ from those arising in multiple representation cases. The existence of separate counsel interposes a buffer between the interests of co-defendants which does not exist when counsel is shared. In this vein, this court has distinguished multiple representation from independent representation, holding that "where dual representation is involved, the danger of conflicts is not so great." United States v. DiCarlo, 575 F.2d 952, 957 ______________ _______ (1st Cir.), cert. denied, 439 U.S. 834 (1978). _____ ______ As here, DiCarlo did not involve multiple _______ representation. It concerned allegations that counsel abandoned a defense strategy, because it would have implicated prospective clients of his law partner. Id. at 955-57. Rejecting the Sixth ___ Amendment claim, we held there to be a presumption that "the lawyer will subordinate his pecuniary interests and honor his -7- primary professional responsibility to his clients in the matter at hand." Id. at 957. Here, the same presumption applies. ___ It would be inappropriate and impractical to extend Foster to the facts of this case. To do so would be to impose a ______ duty on district courts to inquire into potential conflicts of interest when they have no reason to know or suspect that such conflicts might exist. District judges do not ordinarily have reason to know who is paying an attorney's fees and we question whether it would be appropriate to require them to routinely inquire into such matters without any cause to do so. Here, Bucuvalas never brought the alleged conflict of interest to Judge Woodlock's attention. Indeed, Judge Woodlock did not learn of the contested fee arrangement until Bucuvalas filed this petition, four years after the fact. We hold that, where an alleged conflict of interest does not involve multiple representation, where no party raises the issue before the court, and where the court has no independent reason to know of the alleged conflict, district courts have no duty to inquire into potential conflicts of interest. In such circumstances, a district court's failure to inquire does not shift the burden of persuasion on a subsequent Sixth Amendment claim to the government. It follows that, in this case, the district court had no duty to inquire and the burden of persuasion did not shift to the government. The burden remained on Bucuvalas to establish an unconstitutional conflict of interest. -8- 2. Conflict of Interest Analysis 2. Conflict of Interest Analysis _____________________________ The Sixth Amendment right to effective assistance of counsel is violated when an actual conflict of interest adversely affects counsel's representation. Cuyler, 446 U.S. at 348. To ______ meet this standard, the defendant must show that (1) the attorney could have pursued a plausible alternative defense strategy, and (2) the alternative strategy was inherently in conflict with or not undertaken due to the attorney's other interests or loyalties. United States v. Soldevila-L pez, 17 F.3d 480, 486 _____________ _______________ (1st Cir. 1994). When an alleged conflict of interest is at issue, actual prejudice need not be established. Id.; Cuyler, ___ ______ 446 U.S. at 349-50. No unconstitutional conflict of interest existed in this case. Bucuvalas claims that a plausible alternative defense strategy existed in that he should have testified on his own behalf to explain that he was merely carrying out the orders of his co-defendants. According to Bucuvalas, Segal's advice that he not testify was impermissibly tainted because Bucuvalas' testimony would have incriminated the very persons responsible for Segal's fees. The flaw in Bucuvalas' argument is that his testifying was not a plausible alternative defense strategy. Had Bucuvalas testified, a prior conviction on a remarkably similar charge would have been introduced into evidence. One of the allegations at trial was that Bucuvalas had bribed a police detective; the prior conviction was for bribing an I.R.S. agent. Moreover, -9- according to Bucuvalas' own testimony during the district court hearing on his Sixth Amendment claims, his testimony at trial would have resulted in an admission to the current charges. We agree with Judge Woodlock, who found that Bucuvalas would have "offered himself up to a cross-examinational meat-grinder on virtually every relevant issue, effectively admitting to the elements of the offenses against him and calling to the jury's attention in a very specific way his role in this offense."1 Even if Bucuvalas had put forth a plausible alternative strategy, his claim would still fail because there is insufficient evidence that Segal's advice was tainted by his relationship with Bucuvalas' co-defendants. A defendant must show that his counsel "actively represented conflicting interests." Cuyler, 446 U.S. at 350. See also Carey v. United ______ ________ _____ ______ States, 50 F.3d 1097, 1100 (1st Cir. 1995) ("the defendant must ______ demonstrate that the alleged conflict is more than 'some attenuated hypothesis having little consequence to the adequacy of representation'") (citing Brien v. United States, 695 F.2d 10, _____ _____________ 15 (1st Cir. 1982)); Soldevila-L pez, 17 F.3d at 487 _______________ ("theoretical or merely speculative conflict of interest" does not constitute Sixth Amendment violation). In Carey, for _____  ____________________ 1 The standard by which this court reviews findings of the district court in ineffective assistance of counsel claims raised on collateral attack is not clear. United States v. Raineri, 42 _____________ _______ F.3d 36, 43 (1st Cir. 1995), cert. denied, 115 S. Ct. 2286 (1995) _____ ______ (standard of review is uncertain); United States v. McGill, 11 _____________ ______ F.3d 223, 226 n.2 (1st Cir. 1993) (same). But see Lema v. United ___ ___ ____ ______ States, 987 F.2d 48, 53 (1st Cir. 1993) (applying "clear error" ______ standard). We refrain from choosing a standard here, however, because Bucuvalas' claims fail under any standard. -10- instance, counsel simultaneously represented co-defendants and advised one not to divulge any information regarding the other when cooperating with the government. Carey, 50 F.3d at 1099- _____ 1100. The cooperating defendant alleged that this advice precluded him from obtaining a sentence reduction. Id. at 1101. ___ The court held that the link between counsel's advice and counsel's interest in protecting his other client was too speculative to establish an actual conflict of interest. Id. at ___ 1100. Bucuvalas argues that an actual conflict of interest can be inferred from Segal's fee arrangement. The facts alleged by Bucuvalas, however, are even less suspect than those alleged in Carey. Bucuvalas had his own attorney, whereas the defendant _____ in Carey shared counsel with a co-defendant. See DiCarlo, 575 _____ ___ _______ F.2d at 957 (individual representation less risky than multiple representation). Moreover, Bucuvalas offers no additional facts to show that Segal had conflicting interests. Significantly, Judge Woodlock, who observed firsthand the dynamics of the trial below, explicitly found that no conflict existed, stating, "I do not find that Mr. Segal in any fashion permitted himself to be directed by any other person . . . in his professional judgment with respect to the strategic dimensions of this case." Bucuvalas has failed to show that Segal's representation was tainted by an actual conflict of interest. -11- The Eleventh Circuit addressed a similar set of facts in Danner v. United States, 820 F.2d 1166 (11th Cir. 1987), cert. ______ _____________ _____ denied, 484 U.S. 1012 (1988), and arrived at the same conclusion. ______ In Danner, counsel's fees were paid through co-defendant's ______ counsel. Id. at 1168-69. Like Bucuvalas, the defendant alleged ___ that counsel's advice not to testify conflicted with counsel's interest in receiving his fees because such testimony would have incriminated his co-defendants. Id. The court held that no ___ conflict of interest existed. Id. ___ For all of these reasons, we conclude that Bucuvalas has not met his burden of demonstrating that his attorney, Segal, labored under an unconstitutional conflict of interest. B. The Strickland Claim B. The Strickland Claim ____________________ Bucuvalas alternatively claims that his Sixth Amendment right to counsel was violated by strategic errors made by Segal. Under Strickland v. Washington, a Sixth Amendment violation __________ __________ occurs when (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. Strickland, 466 __________ U.S. at 687. The defendant bears the burden of proving both prongs of this test. Id. This burden is heavy. Argencourt v. ___ __________ United States, 78 F.3d 14, 16 (1st Cir. 1996); United States v. _____________ ______________ Lema, 987 F.2d 48, 51 (1st Cir. 1993). ____ Counsel's performance is deficient under Strickland's __________ first prong when it is "so inferior as to be objectively unreasonable." United States v. McGill, 11 F.3d 223, 226 (1st _____________ ______ -12- Cir. 1993). In making this determination, "judicial scrutiny of counsel's performance must be highly deferential." Strickland, __________ 466 U.S. at 689. "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. ___ Bucuvalas suggests that Segal's performance was deficient in two respects. First, Bucuvalas claims that Segal should have discussed the potential risks presented by the fee arrangement with Bucuvalas and should have disclosed the fee arrangement to the court. Segal's failure to take these measures, however, was not unreasonable. An attorney's obligation in such circumstances is encapsulated by Massachusetts Supreme Judicial Court Rule 3:07, DR 5-107. It states, "[e]xcept with the consent of his client after full disclosure, a lawyer shall not . . . accept compensation for his legal services from one other than his client." Massachusetts Supreme Judicial Court Rule 3:07, DR 5-107 (West 1996). Segal fulfilled his obligations under this rule. Bucuvalas' consent was evident, and further disclosure was not necessary because Bucuvalas orchestrated the fee arrangement. Judge Woodlock, in fact, found that Bucuvalas "was fully aware of the relationships that are necessarily involved in this case and, consequently, made his own good judgments or, at least, fair judgments about how to proceed . . . ." We agree that Segal's handling of the fee arrangement did not constitute deficient performance. -13- Bucuvalas also claims that Segal's performance was deficient, because he should have advised Bucuvalas to testify on his own behalf. In Lema, however, this court found that ____ counsel's advice that his client not testify did not constitute deficient performance when such testimony would have divulged a prior conviction. Lema, 987 F.2d at 50-53. Lema held that, ____ ____ "[u]naccompanied by coercion, legal advice concerning exercise of the right to testify infringes no right." Id. at 52. See also ___ ________ United States v. Teague, 953 F.2d 1525, 1534-35 (11th Cir.) (en _____________ ______ __ banc), cert. denied, 506 U.S. 842 (1992). ____ _____ ______ Bucuvalas makes no allegations of coercion. This case is, therefore, analogous to Lema because Bucuvalas' testimony ____ would have divulged a prior conviction for similar charges. Here, in fact, there was an additional reason not to testify. His testimony at trial would likely have led to an admission of several of the charges. Judge Woodlock commented that "[p]utting Mr. Bucuvalas on the stand in these circumstances would have opened him up to a scorching cross examination," and that "Mr. Segal gave the recommendation which, frankly, any competent criminal defense attorney would have given under these circumstances, that Mr. Bucuvalas not take the witness stand." We agree. Segal gave Bucuvalas the best possible advice. His performance was not constitutionally deficient in any respect. Bucuvalas has, therefore, failed to satisfy the first prong of Strickland. __________ -14- Even if Bucuvalas had established that Segal's performance was deficient, his claim still fails because he has not satisfied the second prong of Strickland, which requires a __________ showing of prejudice. To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; __________ Argencourt, 78 F.3d at 16. Bucuvalas claims that, absent the __________ alleged errors, he would have taken the stand on his own behalf and, as a result, he would not have been convicted. We disagree. Had Bucuvalas testified, the likelihood of his conviction would have been increased by the introduction of the prior conviction and by Bucuvalas' inevitable admissions. We find that Bucuvalas has failed to establish prejudice and cannot, therefore, establish a Sixth Amendment violation under Strickland. __________ III. III. Conclusion Conclusion For the reasons discussed above, we find that neither counsel's fee arrangement nor counsel's advice that Appellant not testify violated Appellant's Sixth Amendment right to effective assistance of counsel. AFFIRMED. -15-