USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-1467

 JUAN FAMILIA-CONSORO,

 Petitioner, Appellant,

 v.

 UNITED STATES,

 Respondent, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Francis J. Boyle, U.S. District Judge

 Before

 Torruella, Chief Judge,
 
 Bownes, Senior Circuit Judge,
 
 Lynch, Circuit Judge.
 
 

 Jane Elizabeth Lee for appellant.

 Kenneth P. Madden, Assistant United States Attorney, with whom
Margaret E. Curran, United States Attorney, was on brief for
appellee.

November 17, 1998

 
 

 BOWNES, Senior Circuit Judge. After his convictions for
possession of cocaine and conspiracy to distribute cocaine were
affirmed on direct appeal, Juan Familia-Consoro ("Familia") moved
to vacate his sentence pursuant to 28 U.S.C. 2255 (1994),
contending that a conflict of interest infected his trial counsel's
performance. The alleged conflict arose because Familia's brother,
Bonifacio, who had agreed to pay Familia's attorney's fee, still
owed the lawyer approximately three thousand dollars at the start
of trial. At trial, Familia sought to defend himself against the
drug charges by suggesting that the cocaine discovered in his
apartment belonged to Bonifacio. In seeking collateral relief,
Familia argued that his attorney did not aggressively pursue the
blame-the-brother strategy out of a desire to obtain the balance of
his fee. 
 The district court denied the motion after conducting an
evidentiary hearing. We conclude that the court properly rejected
the claim, and now affirm.
 I.
 We briefly sketch the history of the case. On
November 11, 1991, police officers entered Familia's Providence,
Rhode Island, apartment to execute a search warrant. A loaded .38
caliber handgun was found under the mattress. At some point during
the search, the police discovered that one of the drawers of a
freestanding dresser was nailed shut. When the officers looked
behind the drawer, they found a paper bag and a metal box. The box
contained $3,866 and two Rhode Island state lottery receipts in the
name of "Juan Familia." The paper bag contained plastic bags
filled with cocaine (299.22 grams). Police also seized a bottle of
inositol, a cocaine cutting agent, from atop the dresser. 
 On the basis of the fruits of this search, a grand jury
indicted Familia and his live-in girlfriend, Priscilla Jackson
("Jackson"), for conspiracy to distribute cocaine in violation of
21 U.S.C. 846 (1998) and possession of cocaine with intent to
distribute in violation of 21 U.S.C. 841 (1998). Familia was
also charged with using a firearm in connection with a drug
trafficking crime. See 18 U.S.C. 924(c)(1998). 
 A jury convicted Familia and Jackson on the two drug
counts, but acquitted Familia on the gun count. The district court
sentenced Familia to eighty-five months of imprisonment, followed
by five years of supervised release.
 Familia appealed pro se from his convictions. His sole
contention on appeal was that his counsel rendered ineffective
assistance of counsel due to a conflict of interest. We affirmed
his conviction and sentence without prejudice to his raising the
claim in a proceeding under 28 U.S.C. 2255, consistent with our
practice disfavoring the consideration of ineffective assistance
claims on direct appeal. See United States v. Familia, No. 92-
1685, 1994 WL 390142 (1st Cir. July 11, 1994).
 On or about March 3, 1995, Familia moved to correct his
sentence pursuant to Fed. R. Crim. P. 35 on the ground that the
court miscalculated the quantity of drugs fairly attributable to
him. The motion was denied by the district court, and we
subsequently upheld that decision. See United States v. Familia, 
No. 95-1447, 1995 WL 674501 (1st Cir. Nov. 14, 1995).
 On January 22, 1996, Familia collaterally attacked his
sentence by challenging the propriety of certain sentencing
enhancements and the adequacy of trial counsel's representation due
to, inter alia, a conflict of interest. He elected to proceed only
with his conflict of interest claim.
 Familia's claim hinged on the theory that economic self-
interest tainted his lawyer's representation at trial. Early on,
Familia's brother, Bonifacio, had offered to pay Familia's legal
fees and had secured the services of a lawyer, John M. Cicilline,
on Familia's behalf. At trial, Familia's counsel had suggested to
the jury that Bonifacio was the true owner of the cocaine
discovered in Familia's bedroom. Familia now asserted, however,
that his attorney had not been sufficiently zealous in portraying
Bonifacio as the real culprit because he hoped that Bonifacio would
pay the remainder of the outstanding fee. 
 The district court, which had originally presided over
Familia's trial, held a hearing on the 2255 motion on
December 17, 1996. Cicilline, the only witness at this hearing,
testified that Bonifacio paid him $1500 as a retainer and later
paid him an additional $500, but never paid the balance of the fee
(approximately $3000). Cicilline acknowledged discussing with
Familia the strategy of blaming Bonifacio for stashing the drugs in
Familia's apartment and stated that he actively pursued this
defense at trial. Cicilline also testified that Bonifacio never
instructed him not to argue that the drugs were owned by Bonifacio
and that Bonifacio did not place any restrictions on his
representation of Familia. Finally, he explained that he had met
with Bonifacio a few times in an attempt to get paid (succeeding
once), but did not try to subpoena him to testify because he did
not know where Bonifacio lived and did not believe that Bonifacio's
testimony would be helpful.
 The district court denied Familia's 2255 motion based
on the purported conflict. In so ruling, it accepted Cicilline's
sworn denial that he downplayed Familia's defense out of a desire
to obtain the balance of his fee. The court concluded that
Familia's trial counsel had, in fact, presented the blame-the-
brother defense, doing "the best he could with the circumstances,"
but that the jury simply rejected the defense.
 II.
 The Sixth Amendment guarantees a defendant effective
assistance of counsel. There can be no doubt that a lawyer who has
an actual conflict of interest deprives his client of effective
counsel by his attempt to "serve two masters." See Cuyler v.
Sullivan, 446 U.S. 335, 349 (1980) (quoting Glasser v. UnitedStates, 315 U.S. 60, 75 (1942)). The question in this case is
whether there was such a conflict. 
 To prevail on a claim of unconstitutional conflict, a
defendant "who raised no objection at trial must demonstrate that
an actual conflict of interest adversely affected his lawyer's
performance." Cuyler, 446 U.S. at 348. If a defendant proves that
a conflict "actually affected the adequacy of his representation,"
he need not show prejudice to obtain relief. Cuyler, 446 U.S. at
349-50. Unless and until this threshold is met, however, a
defendant "has not established the constitutional predicate for his
claim of ineffective assistance." Id. at 350. In this Circuit, we
have elaborated upon the Cuyler rule to require a defendant to show
that (1) the attorney could have pursued a plausible alternative
defense strategy and (2) the alternative trial tactic was
inherently in conflict with or not pursued due to the attorney's
other loyalties or interests. See Bucuvalas v. United States, 98
F.3d 652, 656 (1st Cir. 1996).
 Although the standard of review of a conflict claim made
in a 2255 motion has been left an open question in the past, we
resolve that issue today. We explicitly adopt the standard we
previously had suggested only implicitly. See, e.g., United Statesv. Raineri, 42 F.3d 36, 43 (1st Cir. 1994). The question whether
a conflict of interest impermissibly tainted an attorney's
performance is a mixed question of law and fact, see Strickland v.
Washington, 466 U.S. 668, 698 (1984); Cuyler, 446 at 342, one that
calls for "the application of legal principles to the historical
facts of [a given] case." Cuyler, 446 U.S. at 342. 
 On appeal from the grant or denial of a 2255 motion, we
conduct a plenary review of the lower court's ultimate legal
determination whether an unconstitutional conflict actually
existed. In embracing the de novo standard, we join virtually
every other circuit in the land. See United States v. Moore, 
F.3d , No. 92-10026, 1998 WL 682173, *2 (9th Cir. Sept. 23, 1998)
("A claim of conflict of interest on the part of trial counsel is
a mixed question of law and fact that we review de novo.");
Williams v. French, 146 F.3d 203, 212 (4th Cir. 1998) (same);
Spreitzer v. Peters, 114 F.3d 1435, 1450 (7th Cir. 1997) (same),
cert. denied, U.S. , 118 S. Ct. 1060 (1998); United States v.
Kauffman, 109 F.3d 186, 187 (3d Cir. 1997) ("Because ineffective
assistance of counsel claims present mixed questions of law and
fact, our review is plenary."); United States v. Gallegos, 108 F.3d
1272, 1279 (10th Cir. 1997) ("we review the district court's
determination of whether an actual conflict existed de novo");
United States v. Hopkins, 43 F.3d 1116, 1118 (6th Cir. 1995)
("Whether the facts in a particular case give rise to a conflict of
interest is a mixed question of law and fact which we review de
novo."); Iron Wing v. United States, 34 F.3d 662, 664 (8th Cir.
1994) (applying same approach for ineffective assistance claims
generally); Porter v. Singletary, 14 F.3d 554, 561 (11th Cir. 1994)
(reviewing conflict claim de novo); Winkler v. Keane, 7 F.3d 304,
308 (2d Cir. 1993) (same); Beets v. Collins, 986 F.2d 1478, 1482
(5th Cir. 1993) (same). But see United States v. Askew, 88 F.3d
1065, 1070-71 (D.C. Cir. 1996) (leaving question unresolved). 
 We recognize that the question whether a lawyer had an
"actual" conflict that "adversely affected" the quality of his
services is intensely fact-bound in nature. The claim often
turns on the precise details giving rise to the purported conflict,
including what actions were taken by counsel, counsel's
explanations for his conduct, and even counsel's (and perhaps
defendant's) credibility. For this reason, we accord the district
court's underlying factual findings due deference, as we do to
state court findings under 28 U.S.C. 2254(d), rejecting them only
if they are clearly erroneous. See Fed. R. Civ. P. 52(a);
Strickland, 466 U.S. at 698 ("district court findings [associated
with ineffective assistance claims] are subject to the clearly
erroneous standard of Federal Rule of Civil Procedure 52(a)"); Lemav. United States, 987 F.2d 48, 53 (1st Cir. 1993) (applying clearly
erroneous standard to factual findings underpinning ineffective
assistance claim in 2255 petition); cf. Ornelas v. United States,
517 U.S. 690, 700 (1996) (holding that questions of reasonable
suspicion and probable cause under Fourth Amendment should be
reviewed de novo but that "findings of historical fact" should be
examined "only for clear error").
 Familia promotes two lines of argument on appeal: that
his counsel's continued representation of him posed such a threat
to his right to adequate counsel as to constitute a per se breach
of the Sixth Amendment; and that, even if it did not rise to the
level of a per se violation, the facts nevertheless demonstrate
that a conflict of interest adversely affected his lawyer's
performance. Neither of these claims has merit. We address them
seriatim. 
 While courts have found per se conflicts in especially
egregious circumstances, we decline Familia's invitation to hold
that his lawyer's continued representation of him posed an
inherent, irreconcilable conflict of interest. The cases in which
per se conflicts have been found typically involved situations
where a lawyer failed to divulge a conflict implicating his own
criminal conduct. See, e.g., United States v. Cancilla, 725 F.2d
867, 870 (2d Cir. 1984) (foregone defense may have revealed
lawyer's own involvement in related conspiracy); Solina v. United
States, 709 F.2d 160, 164 (2d Cir. 1983) (trial counsel's failure
to disclose his unlicensed status amounted to concealing criminal
conduct). In marked contrast, the inherent risk of harmful
conflict here was not so great that a defendant faced with such
circumstances necessarily suffers an "[a]ctual or constructive
denial of the assistance of counsel altogether." Strickland, 466
U.S. at 692. There is always a possibility when a third party with
an arguable stake in the outcome holds the purse strings that a
lawyer might place his own proprietary interest above those of his
client. But the inflexibility of a per se rule would be unjust and
unworkable. We think the best approach is to conduct a
particularized inquiry in each case to see whether a conflict has
improperly tainted the proceedings. 
 We follow that tack here. On the facts before us, we can
discern no real conflict that infected the quality of his lawyer's
representation. We presume, until it is shown otherwise, that a
lawyer ordinarily "will subordinate his pecuniary interests and
honor his primary professional responsibility to his clients." 
Bucuvalas, 98 F.3d at 656 (quoting United States v. DiCarlo, 575
F.2d 952, 957 (1st Cir. 1978)); see United States v. O'Neil, 118
F.3d 65, 71 (2d Cir. 1997) (rejecting claim that fee dispute posed
conflict of interest), cert. denied, U.S. , 118 S. Ct. 728
(1998). By the same token, that a possible coperpetrator pays a
defendant's legal fees does not, without more, demonstrate that a
real conflict tainted the representation he or she received. See,
e.g., Bucuvalas, 98 F.3d at 656-57 (payment of fees by codefendants
did not give rise to actual conflict).
 It must be emphasized that Familia does not contend that
his attorney failed to pursue an alternative strategy of placing
the blame on Bonifacio (he did advance it), but that he did not
pursue it aggressively enough for fear of alienating Bonifacio. 
Because the defense actually was presented at trial, Familia faces
an uphill battle to show that an improper economic motive dampened
his lawyer's ardor.
 When we examine the record closely, the claim
disintegrates completely. The unrebutted testimony of Cicilline at
the hearing was that Bonifacio never placed any restrictions on the
representation to be provided Familia. There is no evidence that
Bonifacio used the outstanding debt as leverage to influence the
course of the defense. Bonifacio never promised full payment only
if Cicilline torpedoed his brother's defense. Nor did Bonifacio
attempt to dissuade Cicilline from arguing that the cocaine
belonged to him, not Familia, by threatening to withhold payment. 
Defendant therefore has failed to demonstrate that his attorney
"actively represented conflicting interests." Cuyler, 446 U.S. at
350. 
 The final and conclusive blow to Familia's claim is that
his lawyer, in fact, implemented the blame-the-brother strategy. 
Cicilline elicited from a police detective on cross-examination not
only that Bonifacio was a suspected drug dealer, but that he had
been arrested for selling cocaine. He presented evidence from
Familia's landlady that Bonifacio had access to the apartment. She
testified that she had seen Bonifacio in Familia's apartment on
several occasions and that she was aware that he had a key to the
apartment. Finally, Cicilline reminded the jury in his closing
argument that Bonifacio was a known cocaine dealer and frequently
stayed at the apartment. Given Cicilline's efforts to suggest an
alternative version of the facts, Familia has failed to show that
his lawyer's conduct was "actually affected" by the alleged
conflict of interest. See, e.g., United States v. Carbone, 880
F.2d 1500, 1501 (1st Cir. 1989) (rejecting claim where nothing in
record showed that purported conflict negatively affected counsel's
cross-examination). 
 Familia quarrels with several of his counsel's decisions
regarding trial strategy, arguing that they reveal a deliberate
effort to protect Bonifacio. We address only three of the alleged
lapses by his lawyer: the decision not to call Bonifacio to the
stand, the failure to elicit from Familia himself that Bonifacio
owned the drugs recovered from Familia's bedroom, and the decision
not to highlight the physical similarities between Bonifacio and
the drug dealer described in a police affidavit used to secure the
search warrant. 
 Although defendant insists that his lawyer should have
called Bonifacio to the stand, he offers no reason for believing
that Bonifacio would have testified at all, much less that he would
have accepted full responsibility for stashing the drugs in
Familia's bedroom without his knowledge. To call Bonifacio would
hardly have been a plausible alternative tactic. Additionally, the
district court accepted Cicilline's explanation that he did not
subpoena Bonifacio because he believed that Bonifacio would likely
have asserted the Fifth Amendment privilege against self-
incrimination. The court did not err in finding that a non-
conflict motive informed trial counsel's refusal to subpoena
Bonifacio. See, e.g., United States v. Garcia-Rosa, 876 F.2d 209,
231 (1st Cir. 1989) (rejecting claim where defendant failed to show
that lawyer's decision not to call witness was due to purported
conflict).
 Likewise, that defense counsel opted not to ask Familia
directly who he believed owned the cocaine discovered in his
apartment is not indicative of a conflict of interest. The
decision by Cicilline not to ask the question appears to have been
sound trial strategy. If Familia had acknowledged that Bonifacio
owned the drugs, he would have made a tacit admission that he knew
the drugs were in his apartment, permitting the jury to find that
he constructively possessed the cocaine. Moreover, Familia himself
seemed reluctant to point the finger at his brother. In response
to the government's question on cross-examination as to who he
claimed to be the true owner of the drugs, he answered, somewhat
vaguely, that Bonifacio was the only one who he knew was involved
in drugs in the past, but that he was not aware that Bonifacio was
still mixed up with drugs. See Familia, 1994 WL 309142, at *2 n.3. 
 Finally, defendant faults his lawyer for not emphasizing
at trial that the individual described in the police affidavit
(referred to as "Juan") as having sold cocaine to a government
informant matched the description of Bonifacio. But doing so would
have highlighted, to Familia's detriment, that an informant
apparently purchased cocaine from "Juan" on three separate
occasions, from Familia's apartment, from Familia's van, and from
the vehicle registered to Familia's girlfriend. Pointing out the
similarities between Bonifacio and "Juan" may have tended to show
that the informant did not actually buy those drugs from Familia,
but at the risk of bolstering the case for conspiracy against
Familia. 
 None of these strategic choices, alone or in combination,
demonstrate that Cicilline's advocacy was compromised by his desire
to be fully compensated for his work. At most, they show an effort
to walk a fine line by showing that Familia was not aware of the
drugs and that Bonifacio may have hidden them in Familia's bedroom
to divert suspicion from himself. To pursue this defense even more
vigorously, however, was fraught with danger. Familia's attorney
would have run the risk of accentuating damaging evidence or
providing the jury with a basis for finding that Familia knew the
cocaine belonged to his brother and that Familia knowingly
possessed it. 
 Defendant has failed to demonstrate that an actual
conflict influenced his attorney's trial decisions. See Cuyler,
446 U.S. at 350 (mere "possibility of conflict is insufficient to
impugn a criminal conviction"). We do not discount the possibility
that in a rare case a lawyer's financial self-interest might be so
corrupting as to compel him or her to intentionally refuse to
zealously pursue a certain line of defense. But we are satisfied
that did not happen here. 
 Affirmed.