Hector **HERNANDEZ NEGRON,**
Petitioner,

v.

**UNITED STATES of America,**
Respondent.

**Civil No. 01–1973(HL).**
**Crim. No. 96–035(HL).**

United States District Court,
D. Puerto Rico.

Aug. 6, 2002.

---

Mauricio Hernandez–Arroyo, Ponce, PR, for plaintiff.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is a petition for post-conviction relief under 28 U.S.C. § 2255 filed by Hector Hernandez Negron ("Hernandez"). In February 1996, a Grand Jury returned a two-count indictment against Hernandez and twenty-one other individuals, charging a conspiracy to distribute controlled substances in violation of 21 U.S.C §§ 841(a)(1) & 846 and aiding and abetting the distribution of controlled substances within 1,000 feet of a school in violation of 21 U.S.C. §§ 841(a)(1) & 860 and 18 U.S.C. § 2. After being found guilty on both counts by a jury, Hernandez was sentenced on August 17, 1998 to four-hundred and fifty (450) months imprisonment, in addition to other penalties.[1] Hernandez appealed, and on July 18, 2000, the First Circuit affirmed his conviction. *United States v. Gonzalez–Vazquez*, 219 F.3d 37 (1st Cir.2000). Hernandez then filed the present petition on July 18, 2001.

On November 21, 2001, the Court dismissed all of Hernandez's claims with the exception of his ineffective assistance of counsel claim.[2] The Court granted Her-

**1.** Cr. 96–035, Dkt. # 512.

**2.** Civ. 01–1973, Dkt. # 2; 175 F.Supp.2d 148 (D.P.R.2001).

nandez a hearing on that case that was held on April 2, 2002. After considering the testimony presented at that time, the Court is prepared to rule.

## DISCUSSION

■ As explained in this Court's prior Opinion,[3] a petitioner alleging ineffective assistance of counsel must show, first, that his counsel's performance was deficient and, second, that this deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Bucuvalas v. United States,* 98 F.3d 652, 658 (1st Cir.1996); *Bonneau v. United States,* 961 F.2d 17, 20 (1st Cir.1992). The petitioner has the burden of proving both prongs of this test, and the burden is a heavy one. *Bucuvalas,* 98 F.3d at 658. An attorney's performance is deficient if it is " 'so inferior as to be objectively unreasonable.' " *Id.* (quoting *United States v. McGill,* 11 F.3d 223, 226 (1st Cir.1993)). The petitioner must show that there is a reasonable probability that, but for his counsel's deficient performance, the outcome would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *United States v. Hart,* 933 F.2d 80, 83 (1st Cir.1991); *Carsetti v. Maine,* 932 F.2d 1007, 1012 (1st Cir.1991). There is a strong presumption that the counsel's performance comes within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. The defendant must overcome the presumption that his counsel's performance could " 'be considered sound trial strategy.' " *Id.* (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). The Court's scrutiny of the attorney's performance must be highly deferential. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

Pending before the Court directly are the following two questions relating to Hernandez's claim of ineffective assistance of counsel: 1) whether Hernandez's attorney advised his client properly as to his potential sentence if he went to trial; and 2) whether Hernandez instructed his attorney to accept the plea offer, and his attorney failed to do so. The Court will address each in turn.

■ Hernandez avers that his trial counsel was ineffective by grossly underestimating his potential sentence if the case were taken to trial. During the hearing, Hernandez testified that his trial counsel, Ramon Garay–Medina, advised him that he faced a maximum sentence of ten years if he went to trial.[4] Garay, on the other hand, testified that he explained to Hernandez that he was facing a maximum sentence of life in prison.[5] While these testimonies are in conflict, the Court need not reconcile them, or make a determination on this question. From the record, it is clear that Hernandez neither relied nor acted upon his counsel's estimation of his maximum exposure. Rather, he has consistently maintained that he was prepared to accept the proposed plea of 36 months at all times from the moment it was offered, and at no time alleged that he would have acted differently had he known that he was facing a life sentence. The implication of Hernandez's statements being that he would have accepted the offer regardless of the amount of time he faced.[6] If this is indeed the case, whether or not his counsel underestimated Hernandez's potential sentence is moot since it had little affect, if any, on Hernandez's decision making process, and therefore, it did not prejudice Hernandez in any way. As such,

---

3. Civ. 01–1973, Dkt. # 2; 175 F.Supp.2d 148 (D.P.R.2001).

4. Hearing Tr. pg. 86.

5. Hearing Tr. pg. 24.

6. Hearing Tr. pgs. 78, 79, 86.

the important question on which the Court should focus remains whether Hernandez truly desired to accept a plea agreement, and whether he intimated that desire to his attorney.

On that question, there was a great deal of conflicting testimony. According to Hernandez, once the plea agreement[7] was proposed sometime in mid 1996, he was prepared to accept it. He testified that he continually asked his attorney when he would be able to sign the agreement, but it was Garay who insisted they wait until the case progressed further before pleading.[8] Hernandez also stated that it was Garay who decided to file a motion to dismiss[9] in September of 1996 based on allegations that the officers in Hernandez's drug case had been arrested and charged with mishandling evidence and corruption.[10] In 1997, after the denial of his motion to dismiss[11], Hernandez claims that he became so desperate after his attorney repeatedly ignored his request to accept the plea that he was forced to ask his sisters to call both his attorney and the Assistant U.S. Attorney handling the prosecution to inform them of his desire to accept the plea. Hernandez's sister, Sherry Hernandez–Negron, verified that she did call both attorneys in mid 1997, but was unable to talk to either directly.[12] Hernandez avers that by the time his attorney decided to follow his instruction to accept the plea, it was too late and the offer had lapsed.

Not surprisingly, Attorney Garay recounted a different tale of events. According to his testimony, Hernandez never instructed him to accept the proposed agreement.[13] Rather, Garay claims that it was Hernandez who first informed him of the police agents corruption arrests and inquired into whether that could lead to the dismissal of his case.[14] Garay testified that Hernandez wanted to try the motion to dismiss first and was willing to wait until the outcome of that motion before making any decisions as to a plea agreement. However, by the time the motion was resolved, the offer was no longer an option.

Finally, AUSA Antonio Bazan, who inherited this prosecution from AUSA Pedrosa, also testified to the facts in this case. According to Bazan, AUSA Pedrosa commenced the plea negotiations with all the defendants in the drug conspiracy.[15] Bazan explained that Pedrosa apparently provided all the defendants with a copy of an unsigned proposed plea agreement with the caveat that each defendant could receive more time than listed in the agreement depending on factors such as criminal histories. Most of the defendants accepted pleas, with the exception of three including Hernandez. As it related to Hernandez, Bazan stated that even though his name appeared on the last page of the agreement, he had not authorized and would not authorize such a deal with Hernandez as he felt uneasy about offering him, a defendant with a criminal history category of IV, a "sweetheart" deal of three to ten years.[16] From his standpoint, however, Bazan claims that it was irrelevant as Garay had informed him that they

7.   Proposed Plea Agreement, Hearing Exh. 1.

8.   Hearing Tr. pgs. 78, 83.

9.   Cr. 96–035, Dkt. # 201.

10.   Hearing Tr. pgs. 78, 83.

11.   The motion to dismiss was denied in May, 1997.

12.   Hearing Tr. pgs. 71, 72.

13.   Hearing Tr. pgs. 23.

14.   Hearing Tr. pgs. 24–27.

15.   Hearing Tr. pgs. 54–55.

16.   Hearing Tr. pgs. 56–58.

would wait for the ruling on the motion to dismiss.

From this testimony, it is clear that the proposed plea agreement was nothing more than a starting point for negotiations between the government and Hernandez. The agreement was not signed nor binding on any party. Nevertheless, if Hernandez instructed his attorney to pursue plea negotiations, and Garay ignored that instruction, then the Court would be compelled to make a finding of ineffective assistance of counsel. However, after reviewing all the testimony, the Court is more inclined to believe that Hernandez was aware of the risks of delaying and more than willing to wait for the outcome of the motion to dismiss before considering taking a plea. This inclination is bolstered by the fact that the alleged desperation and urgency that prompted Hernandez to ask his sisters to call AUSA Bazan regarding his desire to plead did not congeal until after the motion to dismiss had been considered and denied. As such, the Court cannot say that Attorney Garay disregarded his client's wishes, but rather worked arduously, under his client's directive, to dismiss the charges against him.

This discussion, however, is purely academic. Hernandez cannot prevail on his ineffective assistance claim because he has not been able to prove that there is a reasonable probability that but for his counsel's deficient actions, the end result would have been different. The fact of the matter is that Hernandez is relying upon a proposed Rule 11(e)(1)(C) plea agreement that was subject not only to AUSA Bazan's authorization and acceptance, but more importantly to this Court's approval. From Bazan's testimony, it is unlikely that he would have agreed to the proposed agreement. Assuming, however, that Bazan would have agreed to make the offer, this Court can unequivocally state that it would not have accepted or approved such a deal for a defendant who not only served in a supervisory role in a drug conspiracy, but also carried with him a criminal history category of IV. To have allowed Hernandez to plead at 36 months would have been inconsistent and contrary to recommendations of the Sentencing Guidelines. Therefore, even assuming that Hernandez had instructed his counsel to accept the agreement, and his counsel had done so, the end result would not have changed inasmuch as this Court would not have approved it. Thus, whether Garay disregarded his client's wishes is of no consequence, and as such, any ineffectiveness on his part did not prejudice Hernandez.

WHEREFORE, the Court having dismissed Hernandez's ineffective assistance of counsel claim, Hernandez's request for post-conviction relief under § 2255 is hereby DENIED. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**