Francisco REYES–VEJERANO,
Petitioner,

v.

UNITED STATES of America,
Respondent.

No. CIV. 97–1652(HL).
No. CRIM. 94–016–(HL).

United States District Court,
D. Puerto Rico.

Oct. 24, 2000.

Rafael F. Castro–Lang, Francisco Reyes–Vejarano, M.D.C. Guaynabo, San Juan, PR, for Francisco Reyes–Vejerano aka Francisco Reyes–Vejarano, plaintiffs.

Nelson J. Perez–Sosa, U.S. Attorney's Office District of P.R., Criminal Division, Hato Rey, PR, for United States of America, defendants.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is a petition for post-conviction relief under 28 U.S.C. § 2255 filed by Francisco Reyes–Vejerano ("Reyes"). The five-count superseding in-dictment in his criminal case charged him with conspiring to possess heroin with intent to distribute and conspiring to make false statements in order to obtain a passport, in violation of 18 U.S.C. §§ 2 & 1542 and 21 U.S.C. §§ 841(a)(1) & 846.[1] Two other individuals were charged along with Reyes. One of them, Jaime Ocampo, pled guilty. Reyes and the other defendant, Wilfredo Jiménez Rodríguez ("Jiménez"), went to trial and were found guilty.[2] Reyes was sentenced to 188 months and a $50,000 fine.[3] He appealed, and on December 1, 1995, the First Circuit affirmed his conviction in an unpublished opinion. *See United States v. Jimenez–Rodriguez,* 70 F.3d 1253, 1995 WL 709639 (1st Cir. 1995).

Reyes then filed the present petition. He claims that he was denied his Sixth Amendment right to effective assistance when his trial attorney, Luis Rafael Rivera ("Rivera"), failed to do an adequate pretrial investigation of the case; made an improper opening statement; failed to object to inadmissible evidence presented by the Government; failed to move for a severance; and failed to let Reyes testify in his own defense. Reyes further claims that his trial attorney was being investigated by the Government and that this created a conflict of interest, which was why Rivera did not let Reyes testify. He also bases his petition on the claims that he was convicted with perjured testimony, that the Government failed to disclose *Brady* material, and that Carmen Toledo, the Government's chief witness, received illegal benefits, as provided in *United States v. Singleton,* 144 F.3d 1343 (10th Cir.1998). The Court held an evidentiary hearing on this petition, during which Reyes and Rivera both testified. The parties have briefed these issues, and the Court is now ready to rule.

1. Crim. no. 94–016(HL), docket no. 64.

2. Crim. no. 94–016(HL), docket nos. 101 & 102.

3. Crim. no. 94–016(HL), docket no. 146.

## DISCUSSION

### 1. Claim of improper pretrial investigation

The Sixth Amendment guarantees a criminal defendant effective assistance of counsel in order to protect that defendant's fundamental right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 684–85, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). The Constitution does not guarantee a defendant a perfect or successful defense; rather, he is guaranteed " 'reasonably effective assistance under the circumstances then obtaining.' " *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993) (quoting *United States v. Natanel*, 938 F.2d 302, 309–10 (1st Cir.1991)). A court should evaluate the challenged conduct not with the benefit of hindsight, but from the attorney's perspective at the time of the trial. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Lema*, 987 F.2d at 51.

A petitioner must show, first, that his counsel's performance was deficient and, second, that this deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Bucuvalas v. United States*, 98 F.3d 652, 658 (1st Cir.1996); *Bonneau v. United States*, 961 F.2d 17, 20 (1st Cir.1992). The petitioner has the burden of proving both prongs of this test, and the burden is a heavy one. *Bucuvalas*, 98 F.3d at 658. An attorney's performance is deficient if it is " 'so inferior as to be objectively unreasonable.' " *Id.* (quoting *United States v. McGill*, 11 F.3d 223, 226 (1st Cir.1993)). The petitioner must show that, but for his counsel's deficient performance, the outcome would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *United States v. Hart*, 933 F.2d 80, 83 (1st Cir.1991); *Carsetti v. Maine*, 932 F.2d 1007, 1012 (1st Cir.1991). He must show that his counsel's errors were so serious that they deprived him of a fair trial, a trial whose result is reliable. *United States v. Ademaj*, 170 F.3d 58, 64 (1st Cir.1999). There is a strong presumption that the counsel's performance comes within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. The defendant must overcome the presumption that his counsel's performance could " 'be considered sound trial strategy.' " *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). The court's scrutiny of the attorney's performance must be highly deferential. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

Reyes claims that his attorney was ineffective at the pretrial stage when he failed to interview or subpoena Lourival Quiñones, Priscila Figueroa, José Soto Ruiz ("Soto"), and Carmen Toledo's brother. Reyes claims that these individuals would all have provided testimony contradicting Toledo's version of the incidents or would have otherwise demonstrated her lack of credibility. Additionally, Toledo testified at trial that she met with Reyes and Ocampo in Vieques to plan a drug-smuggling trip.[4] Reyes claims that if Rivera had gone to Vieques to investigate, he would have discovered that Reyes has never been in Vieques, and the fruits of this investigation could then have been used to further discredit Toledo. Finally, Reyes also argues that if Rivera had fully investigated Toledo's use of false identifications, he would have discovered that it was Toledo herself who obtained her false driver's license—and not Ocampo, as she testified—and that she used her false identifications primarily for the purpose of making numerous fraudulent credit purchases, and not for drug smuggling, as she testified. All this evidence, Reyes asserts, could have been presented to discredit Toledo.

At the evidentiary hearing, Rivera testified as to the investigation and preparation he did for Reyes' trial. Rivera stated that he did not pursue an investigation of how Toledo obtained a false driver's license because she had admitted that it was

---

4. Crim. no. 94–016(HL), trial transcript, docket no. 119, at 105–08.

false.[5] He did interview Toledo's brother, but he was unwilling to testify.[6] He also interviewed Toledo's mother.[7] Rivera also spoke with Soto, but he was scared to testify. Rivera was further concerned that calling Soto as a witness would open the door to allegations of drug use by Reyes.[8] After Rivera interviewed Toledo, he moved for a continuance of the trial date to allow him to subpoena Quiñones as a witness, but the Court denied the request.[9]

Additionally, Rivera located and interviewed Toledo's estranged husband, Luis Noel de Jesús, and had him testify that Toledo had a reputation for lack of truthfulness, that her testimony that she had not used drugs was false, and that she had fraudulently filled out an application for a car loan.[10] Although Rivera did not go to Vieques, he did track down Sara Luz Velázquez, who lives in Vieques and whose identity Carmen Toledo assumed in her false identifications. Rivera flew Velázquez to San Juan and presented her testimony to state that she did not know Reyes and had never seen him in Vieques. She testified to contradict Toledo's version as to how she obtained her false identification.[11] Rivera also presented Ocampo, who testified that Toledo fraudulently used his name to try to purchase an automobile, that he never met with Reyes in Vieques, and that Reyes did not have anything to do with the drug importation activities in which Ocampo had been involved.[12]

Shortly after Rivera entered the case, he met with Reyes to discuss a list that Reyes had prepared of twenty tasks which he wanted Rivera to do in preparation for the trial.[13] For sixteen of the twenty tasks, Rivera testified that he was able to accomplish all or some of them.[14] Of the other four, Rivera concluded that one was unnecessary,[15] and another would have required risky investigative work in a dangerous neighborhood.[16]

■■ Counsel for a criminal defendant must make a reasonable investigation in the preparation of his case. *Kenley v. Armontrout*, 937 F.2d 1298, 1304 (8th Cir. 1991). Counsel's assistance will be found to be ineffective if he has performed little or no investigation into the case. *Id.* Generally, a finding of ineffective assistance will be based on a failure to investigate where the evidence which the investigation would have produced would have made the defendant's conviction nearly impossible. *Passos–Paternina v. United States*, 12 F.Supp.2d 231, 236 n. 4 (D.P.R.1998), *aff'd* 201 F.3d 428 (1st Cir.1999) (Table case).

---

5. Civil no. 97–1652(HL), evidentiary hearing transcript, at 173.

6. Civil no. 97–1652(HL), evidentiary hearing transcript, at 145–46.

7. Civil no. 97–1652(HL), evidentiary hearing transcript, at 141.

8. Civil no. 97–1652(HL), evidentiary hearing transcript, at 166–68. The transcript refers to Soto's first name as "Alicea." Reyes in his brief refers to him as "Luis." The Court assumes that "Alicea" is a typographical error and that Alicea Soto and Luis Soto are references to the same person:

9. Crim. no. 94–016(HL), docket no. 75.

10. Civil no. 97–1652(HL), evidentiary hearing transcript, at 146–47; Crim. no. 94–016(HL), trial transcript, docket no. 119, at 448–56.

11. Civil no. 97–1652(HL), evidentiary hearing transcript, at 143–45; Crim. no. 94–016(HL), trial transcript, docket no. 119, at 467–71.

12. Crim. no. 94–016(HL), trial transcript, docket no. 119, at 474–507.

13. Civil no. 97–1652(HL), evidentiary hearing transcript, at 141; evidentiary hearing exhibit 7.

14. Civil no. 97–1652(HL), evidentiary hearing transcript, at 141–54.

15. Civil no. 97–1652(HL), evidentiary hearing transcript, at 142.

16. Civil no. 97–1652(HL), evidentiary hearing transcript, at 147–48.

In the present case, the testimony at the evidentiary hearing by Rivera—who the Court finds to be a credible witness—indicates that he did a reasonable investigation and preparation for the trial. The record does not indicate that he did little or no investigation. The gist of Reyes' allegations of Rivera's improper investigation is that he did not investigate certain matters which, according to Reyes, would have produced evidence to discredit Toledo. It may be true that Rivera did not fully investigate and develop the points to which Reyes alludes in his petition. However, the record clearly demonstrates that Rivera did investigate other matters and presented witnesses to discredit Toledo. Furthermore, at trial Rivera vigorously cross-examined Toledo by questioning her on, among other things, fraudulent loan applications, criminal investigations of her for drug dealings in New York, and how she obtained her false identifications.[17] Rivera's investigations and trial tactics attempted to discredit Toledo. Reyes claims that this result would have been achieved by the investigations that Reyes alleges that Rivera did not do. Both the steps which Reyes says should have been taken and the steps which Rivera actually took were viable means of reaching the same result. A court's determination of whether an attorney's performance constituted ineffective assistance does not require it to second-guess which of two viable strategies would have been more likely to succeed. A criminal defendant is entitled only to " 'reasonably effective assistance under the circumstances then obtaining.' " *Lema*, 987 at 51 (quoting *Natanel*, 938 F.2d at 309–10).

Here, the record indicates that Rivera's performance on these matters was reasonably effective. The fact that the tactics which Reyes proposes might have proved more successful is not enough to demonstrate that Rivera's performance was ineffective. A court does not evaluate an attorney's conduct with the benefit of hindsight, but from the attorney's perspective at the time of the trial. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Lema*, 987 F.2d at 51. Rivera entered this case in early February 1994, and the trial was held in mid-April of that same year.[18] Thus, he had a little over two months to investigate and prepare for trial. In the time he had for preparation, Rivera had to make decisions on which tactics to use and which matters to investigate. The fact that he did not dedicate his time on the matters which Reyes now claims he should have does not constitute ineffective assistance, given the fact that Rivera did dedicate his time on other legitimate tactics and matters.

## 2. Claims of a denial of the right to testify and of a conflict of interest

Reyes also bases his claim of ineffective assistance on allegations that Rivera did not let him testify in his own defense. Reyes also claims that he was the victim of a conflict of interest involving Rivera. Specifically, Reyes alleges that at the time of the trial Rivera was under investigation for his own involvement with individuals who were charged in other cases with drug dealing; that Rivera did not let Reyes testify because he feared his own involvement would be revealed during Reyes' testimony; and that Rivera did not aggressively defend Reyes for fear that a successful defense would incur the wrath of the Government and lead to Rivera's being indicted in retaliation.

A criminal defendant's claim that his own counsel violated his right to testify on his behalf is properly viewed as a claim of ineffective assistance of counsel. *United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir.1992). Absent evidence of coercion, legal advice concerning the defen-

---

17. Crim. no. 94–016(HL), trial transcript, docket no. 119, at 159–244.

18. Civil no. 97–1652(HL), evidentiary hearing transcript, at 144; Crim. no. 94–016(HL), docket no. 9.

dant's right to testify does not constitute a violation. *Lema,* 987 F.2d at 52. In the present case, both Reyes and Rivera testified at the evidentiary hearing on this issue. At the hearing Reyes averred that he insisted that he be allowed to testify, but that Rivera prevented him from doing so.[19] Rivera admitted that Reyes wanted to testify. However, Rivera stated that he counseled Reyes against testifying because putting him on the stand would pose the risk of revealing that Reyes was extremely wealthy, which could be misconstrued by a jury; that he had close relationships with other individuals who had been charged with drug trafficking; and that he was Colombian, which could also be misconstrued by a jury.[20] Rivera further stated that he convinced Reyes not to testify and that it was Reyes who decided not to take the stand. Rivera denied that he coerced or otherwise prevented Reyes from testifying.[21] The Court finds Rivera to be the more credible witness on this issue. By contrast, the Court finds that Reyes' testimony at the hearing to be lacking in credibility. The reasons that Rivera mentioned for advising Reyes not to testify constitute legitimate strategy concerns. The scenario that Rivera portrays strikes the Court as being a much more accurate portrayal of what happened during the trial.

■ Reyes also argues that Rivera had a conflict of interest and that this motivated him to prevent Reyes from testifying. A defendant's Sixth Amendment right to effective assistance of counsel is violated when an actual conflict of interest adversely affects his lawyer's representation. *Bucuvalas,* 98 F.3d at 656. To establish a conflict of interest, the defendant must show that (1) there was a plausible alternative defense strategy that his attorney could have pursued and (2) this alternative tactic was "inherently in conflict with or not pursued due to the attorney's

other loyalties or interests." *Familia–Consoro v. United States,* 160 F.3d 761, 764 (1st Cir.1998); *Bucuvalas,* 98 F.3d at 656; *United States v. Soldevila–Lopez,* 17 F.3d 480, 486 (1st Cir.1994). When an alleged conflict of interest is at issue, the defendant need not establish actual prejudice. *Bucuvalas,* 98 F.3d at 656.

■ A merely theoretical or speculative conflict of interest will not be sufficient to demonstrate a Sixth Amendment violation. *Soldevila–Lopez,* 17 F.3d at 487. The defendant must show that his attorney "actively represented conflicting interests." *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980); *Bucuvalas,* 98 F.3d at 657; *see also Carey v. United States,* 50 F.3d 1097, 1100 (1st Cir.1995) ("the defendant must demonstrate that the alleged conflict is more than 'some attenuated hypothesis having little consequence to the adequacy of representation' ") (quoting *Brien v. United States,* 695 F.2d 10, 15 (1st Cir.1982)). The question of whether a lawyer had an actual conflict which adversely affected the quality of his performance is intensely fact-bound, and it will often turn on the exact details of the alleged conflict, including the action taken by counsel, the explanations for his conduct, and the credibility of the counsel and the defendant. *Familia–Consoro,* 160 F.3d at 765.

■ In the present case, Reyes claims that Rivera's allowing him to testify would have constituted a plausible alternative strategy. As the Court found above, however, the record does not support a finding that Rivera prevented Reyes from testifying. The Court will consider Reyes' argument to be that Rivera's counseling him not to testify would have constituted a plausible alternative strategy. Reyes must also show that this conduct was in

---

**19.** Civil no. 97–1652(HL), evidentiary hearing transcript, at 48–53.

**20.** Civil no. 97–1652(HL), evidentiary hearing transcript, at 12–14.

**21.** Civil no. 97–1652(HL), evidentiary hearing transcript, at 14–15.

conflict with or not pursued due to Rivera's other interests. *See id.* at 764. Reyes makes much of the fact that Rivera is mentioned in a Drug Enforcement Administration report of investigation for a case that was being investigated and prosecuted around the same time as Reyes' case. The report indicates that Rivera has a "NADDIS" identification number, which is apparently used to keep track of individuals whose names appear in DEA reports.[22] The Government has submitted under seal other DEA investigation reports that also mention Rivera.[23] The Court has reviewed these reports. Many of them contain hearsay. They do not constitute evidence sufficient to establish a conflict of interest. It should come as no surprise that an attorney who represents individuals charged with drug trafficking is mentioned in DEA reports investigating these individuals. Moreover, the mere fact that an individual has a NADDIS number does not mean that that individual is being investigated by the DEA.[24]

Rivera's hearing testimony—which the Court again finds to be credible—further refutes the notion that there was a conflict of interest. He testified that although he did not have a good relationship with the DEA, he was unaware that he was the subject of an investigation by the agency; that he was not concerned by the information in the report which Reyes has presented; and that he tried Reyes' case to the best of his abilities.[25] Based on this testimony, along with the record as a whole, the Court concludes that there is not evidence to establish that Rivera's ad-

vice to Reyes that he not testify was caused by a conflict of interest.[26]

### 3. Claims regarding Rivera's performance at trial

#### a. Opening statement

Reyes also makes a series of claims of ineffective assistance based on Rivera's performance at trial. The Court addresses each claim in turn. Reyes first argues that Rivera's opening statement was deficient when he told the jury that it was "our responsibility to put out some witnesses for you who will clear a lot of facts that were elicited here through those government witnesses" and that "the defense doesn't have to prove that this person is innocent."[27] Reyes claims that these comments incorrectly stated the burden of proof and implied to the jury that he was in fact guilty. The Court finds that the second comment by Rivera is a not an entirely incorrect statement of the burden. At any rate, the Court instructed the jury at the beginning of the trial that the Government has the burden of proving the defendants' guilt beyond a reasonable doubt.[28] In its closing instructions, the Court again mentioned this standard repeatedly.[29]

There is a presumption that jurors follow the instructions they are given. *Richardson v. Marsh,* 481 U.S. 200, 206, 211, 107 S.Ct. 1702, 1707, 1709, 95 L.Ed.2d 176 (1987); *Arthur D. Little, Inc. v. Dooyang Corp.,* 147 F.3d 47, 53 (1st Cir.1998);

---

22. Civil no. 97–1652(HL), evidentiary hearing exhibit 2.

23. Civil no. 97–1652(HL), docket no. 15.

24. Civil no. 97–1652(HL), Court's evidentiary hearing exhibit I.

25. Civil no. 97–1652(HL), evidentiary hearing transcript, at 27–33.

26. Reyes also argues that Rivera did not try to win Reyes' case for fear of drawing the ire of the Government and an indictment against

him. For the same reasons that the Court discussed above denying Reyes' conflict of interest argument as to his allegation that Rivera counseled him not to testify, the Court also denies this argument.

27. Crim. no. 94–016(HL), trial transcript, docket no. 119, at 444–45.

28. Crim. no. 94–016(HL), trial transcript, docket no. 119, at 12, 19–20.

29. Crim. no. 94–016(HL), trial transcript, docket no. 119, at 632–33, 638, 648–52, 657.

*United States v. Magana,* 127 F.3d 1, 6 (1st Cir.1997). Thus, the Court must presume that the jury in this case followed the Court's instruction on the proper standard of proof. Reyes has not proffered any reason for the Court to presume otherwise.

#### b. Failure to object to 404(b) evidence

█ Reyes also argues that Rivera was ineffective when he failed to object in two instances to Toledo's testimony. In the first instance, Toledo stated that she participated in a drug shipment with a man to whom Reyes had introduced her.[30] In the second, she testified that another drug transaction fell through when she was unable to obtain her passport. She was making the arrangements to get it while she went with Reyes to a pub.[31] Reyes claims that this testimony should have been objected to pursuant to Evidence Rule 404(b).

The mere failure to object to evidence is not enough to show ineffective assistance; the petitioner must also show that he suffered prejudice as a result of his counsel's silence. *Atkins v. Attorney General of Alabama,* 932 F.2d 1430, 1432 (11th Cir. 1991); *United States v. Andiarena,* 823 F.2d 673, 679 (1st Cir.1987). This showing will be difficult to establish when the remaining evidence is enough to make out a strong case against the defendant. *Cf. Atkins,* 932 F.2d at 1432–33 (When the other evidence is not overwhelming, the inadmissible evidence may prejudice the defendant's trial). In the present case, the two anecdotes which Reyes claims were inadmissible under Rule 404(b) constituted, at most, marginal evidence in support of the Government's case. Even if the Court assumes that this testimony should have been stricken, it represents a small portion of all the evidence which the prosecution presented in its case against Reyes. Reyes has not shown that allowing this testimony prejudiced his case and caused him to be found guilty. Moreover, although Rivera did not object to these specific parts of Toledo's testimony, he vigorously attacked her overall credibility on cross-examination, with his own witnesses, and in his closing. The fact that he failed to object to these two portions of her testimony does not constitute ineffective assistance. *Cf. United States v. Kellum,* 42 F.3d 1087, 1095 (7th Cir.1994) (Failure to object to witnesses' testimony was not ineffective assistance, especially in light of counsel's vigorous attack in closing of the credibility of those same witnesses).[32]

#### c. Failure to object to other evidence

Reyes points to other examples of evidence which, he argues, should not have been admitted. One such instance was DEA Agent Héctor Ortíz, who testified on Toledo's cooperation with the Government in an undercover operation involving individuals who had nothing to do with Reyes' case.[33] Reyes argues that this testimony constituted improper bolstering of Toledo's credibility and that Rivera should have objected to it. Even if the Court assumes that such an objection would have been sustained, Rivera's failure to object does not constitute ineffective assistance. In his cross-examination of this witness, Rivera made the point that Reyes had no involvement whatsoever in the undercover operation about which Agent Ortíz testified.[34] Additionally, as noted above, Riv-

---

**30.** Crim. no. 94–016(HL), trial transcript, docket no. 119, at 101–02.

**31.** Crim. no. 94–016(HL), trial transcript, docket no. 119, at 158.

**32.** On direct appeal, Reyes challenged the Government's presentation of this testimony. *See* Civil no. 97–1652(HL), docket no. 12, Appellate brief, at 22–24. In its opinion, the

First Circuit summarily disposed of this argument. *See Jimenez–Rodriguez,* 70 F.3d 1253, 1995 WL 709639, at *5.

**33.** Crim. no. 94–016(HL), trial transcript, at 308–14.

**34.** Crim. no. 94–016(HL), trial transcript, at 315.

**112**

era used other tactics to attack Toledo's credibility. Moreover, Reyes has not shown that this testimony prejudiced his case. Rivera's failure to object to Ortíz' testimony was not ineffective assistance.

Reyes also points to the Government's use of the transcript from Jaime Ocampo's change of plea hearing to impeach Ocampo.[35] He argues that Rivera failed to prevent the use of this transcript. However, Rivera *did* object to the Government's use of the transcript, and the Court gave the jury a limiting instruction on its use.[36] Rivera's handling of this issue was not deficient or so inferior as to be objectively unreasonable. This was not ineffective assistance.

▮ Lastly, Reyes argues that Rivera should have objected to the testimony of Customs agent Jorge Calderón who testified that Toledo mentioned Reyes' name when she was first detained. Calderón then called his supervisor, who in turn contacted the U.S. Attorney's Office. Calderón's supervisor was told that there was a case pending against Reyes. Reyes argues that Rivera should have objected to this reference to him in another case because it was hearsay, highly prejudicial, and inaccurate. Reyes claims that in reality the Government had pending only an in rem case against properties owned by Reyes. The Court finds that the failure to object to this passage was not a deficient performance. This was merely a brief mentioning of Reyes, and the permitting of this testimony was not so prejudicial as to alter the outcome of the case. In fact, an objection could have been counterproductive by drawing the jury's attention to the in rem case. The failure to object was not ineffective assistance.

#### d. Failure to move for a severance

▮ Reyes' next argument is that Rivera should have moved to sever his case. He asserts that had his case been severed, his co-defendant Jiménez would have testified that he did not know Reyes and that he did not engage in any drug trafficking with him. Reyes argues that Jiménez would have impeached Toledo's testimony. Under certain circumstances, a court may sever one defendant's case to allow for a co-defendant to testify on his behalf. *See United States v. Smith,* 46 F.3d 1223, 1231 (1st Cir.1995). The general rule in federal court, however, is that defendants who are indicted together should be tried together. *United States v. Shareef,* 190 F.3d 71, 77 (2nd Cir.1999); *United States v. DeLeon,* 187 F.3d 60, 63 (1st Cir.1999). Moreover, it is not apparent that such a motion would have been successful. At the time of Reyes' trial, it was an open question as to whether a severance was justified when, as in Reyes' case, a codefendant's offer to testify was conditioned upon the order of the separate trials. *See Smith,* 46 F.3d at 1231 n. 3. A number of courts had ruled that it was not. *See United States v. Washington,* 969 F.2d 1073, 1080 (D.C.Cir.1992); *United States v. Blanco,* 844 F.2d 344, 352–53 (6th Cir. 1988); *United States v. Haro–Espinosa,* 619 F.2d 789, 793 (9th Cir.1979); *United States v. Becker,* 585 F.2d 703, 706 (4th Cir.1978). Given the lack of a clear likelihood of success that a motion for severance would have had, Rivera's failure to move for one was not deficient or so inferior as to be objectively unreasonable. Additionally, Reyes has not shown that this testimony would have been enough to overcome the Government's evidence against him. Thus, he has also failed to meet the prejudice prong. The failure to move for severance was not ineffective assistance.

#### 4. Claims of Brady violation

Reyes next claims that the Government failed to disclose prior to trial exculpatory *Brady* material. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215

**35.** Crim. no. 94–016(HL), trial transcript, at 516–17, 523–27.

**36.** Crim. no. 94–016(HL), trial transcript, at 517–23, 527–28.

(1963). Reyes alleges that the Government had evidence regarding Toledo's false identifications and driver's license; her prior work as a government informant; and drug associates of Toledo and Jeffrey Martínez, another Government witness. Reyes argues that this evidence could have been used to impeach Toledo. He also claims that the Government should have disclosed evidence that Martínez attempted to murder Orlando Romero Pérez in 1991 and that this evidence could have been used to impeach Martínez.

With regard to the evidence of Martínez' alleged attempted murder, Reyes evidence is a sworn statement by Romero Pérez, the victim of the attack.[37] Romero Pérez avers that prior to the making of this statement in May 1994, he had never accused Martínez of this act. If the victim had never brought a formal accusation against Martínez, it is unclear how the Government could have had information of this incident. Thus, there could have been no *Brady* violation regarding this evidence.

 With regard to the evidence on Toledo, at the evidentiary hearing the Court ordered the Government to produce under seal its files on her. It has done so, and the Court has reviewed them.[38] The files do contain material to impeach Toledo, but this material was presented at trial. The Court found no new evidence in the files. At any rate, the Court notes that the alleged evidence which Reyes claims was withheld dealt only with her use of false identifications and her prior involvement in drug trafficking. Even if the Government did have such evidence and did withhold it, there would not be a *Brady* violation. At trial, the defense did present evidence of Toledo's use of false identifications, fraudulent transactions, and prior drug dealings. The Constitution is not violated every time that the Government fails to disclose exculpatory evidence. *Kyles v. Whitley,* 514 U.S. 419, 436–37, 115 S.Ct. 1555, 1567, 131 L.Ed.2d 490 (1995). Exculpatory evidence is material, and a constitutional error results from its suppression, " 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Id.* at 433–34, 115 S.Ct. at 1565 (quoting *United States v. Bagley,* 473 U.S. 667, 682, 685, 105 S.Ct. 3375, 3383, 3385, 87 L.Ed.2d 481 (1985)); *Gilday v. Callahan,* 59 F.3d 257, 267 (1st Cir.1995). A reasonable probability of a different result is shown when the Government's suppression of evidence " 'undermines confidence in the outcome of the trial.' " *Kyles,* 514 U.S. at 434, 115 S.Ct. at 1566 (quoting *Bagley,* 473 U.S. at 678, 105 S.Ct. at 3381). The question is whether, in the absence of the suppressed evidence, the defendant received a trial that is "worthy of confidence." *Id.* at 434, 115 S.Ct. at 1566.

 At Reyes' trial, evidence of Toledo's use of false identifications, alleged fraudulent transactions, and involvement in drug dealings was presented. The record contained fertile ground for an attack on her credibility, and Rivera did make such an attack. Unfortunately for Reyes, the jury did not find it convincing. Even if the Government did have additional evidence on these points—and there is no indication that it did—any failure by the Government to disclose it would not have undermined the confidence in the outcome of the trial. Thus, Reyes' claim of a *Brady* violation is unavailing.[39]

### 5. *Remaining claims*

Reyes makes two other challenges to his sentence. In one he argues for relief on

---

37. Civil no. 97–1652(HL), docket no. 2, exhibit 15.

38. Civil no. 97–1652(HL), docket no. 31.

39. Reyes also raised this argument on direct appeal. *See* docket no. 12, Appellant brief, at 46–49. The First Circuit denied this argument. *See Jimenez–Rodriguez,* 70 F.3d 1253, 1995 WL 709639, at *5. A petitioner may not raise in a section 2255 claim an issue that was resolved on direct appeal. *Murchu v. United States,* 926 F.2d 50, 55 (1st Cir.1991).

the grounds that Toledo received illegal benefits from the Government in exchange for her testimony. In support of this argument, he cites to *United States v. Singleton*, 144 F.3d 1343 (10th Cir.1998). The Tenth Circuit, en banc, vacated this decision, *id.* at 1361–62, and subsequently reversed it, 165 F.3d 1297 (10th Cir.1999). Other courts have roundly criticized the original *Singleton* decision. *See United States v. Hunte*, 193 F.3d 173, 174 (3rd Cir.1999) (collecting cases). Most importantly, the First Circuit has expressly rejected its reasoning. *See United States v. Lara*, 181 F.3d 183, 197–98 (1st Cir.1999).

Reyes' second challenge is based on the assertion that his conviction was based on Toledo's perjured testimony. He raised this argument on direct appeal,[40] and the First Circuit denied it, *see Jimenez–Rodriguez*, 70 F.3d 1253, 1995 WL 709639, at *4. Thus, he may not raise this issue here. *See Murchu*, 926 F.2d at 55.

The overall gist of Reyes' petition is that he was denied evidence—either by his attorney's allegedly deficient performance or by alleged Government misconduct—which could have been used to impeach Carmen Toledo. The problem with this theory is that at trial, his defense *did* attack this witness' credibility through cross-examination and evidence. The fact that she was not attacked using the evidence which Reyes now, with the benefit of hindsight, claims should have been used is not sufficient to justify the granting of his petition.

WHEREFORE, for all of the reasons set forth above, the Court denies Reyes' section 2255 petition. Judgment shall be entered accordingly.

IT IS SO ORDERED.

---

**40.** Civil no. 97–1652(HL), docket no. 12, Appellant brief, at 12–16.