**Jerry RESTO–DÍAZ, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Nos. Civ.00–1760(HL), Crim.96–075(HL).

United States District Court, D. Puerto Rico.

Jan. 4, 2002.

Marie Y. Watson, Stone Mountain, GA, for Jerry Resto–Díaz.

Nelson J. Perez–Sosa, U.S. Attorney's Office District of P.R., Criminal Division, Hato Rey, PR, for United States of America.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is a petition for post-conviction relief under 28 U.S.C. § 2255 filed by Jerry Resto–Díaz ("Resto"). The four-count second superseding indictment in his criminal case charged him and two other defendants with two counts of carjacking, the second of which resulted in a death, in violation of 18 U.S.C. § 2119; two counts of using and carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(3); and aiding and abetting each other in the commission of these offenses, in violation of 18 U.S.C. § 2.[1] Resto's two co-defendants plead guilty. Resto went to trial and was found guilty on all counts.[2] He was sentenced to life plus twenty-five years.[3] He appealed and the First Circuit affirmed his conviction in an unpublished opinion. *See United States v. Resto–Díaz*, 215 F.3d 1313, 2000 WL 308665 (1st Cir.2000).

Resto then filed the present petition. When the petition was first filed, he was represented by counsel. That attorney withdrew.[4] Subsequently he retained new counsel.[5] In the interim, Resto inundated the Court with a series of *pro se* motions raising a tsunami of claims.[6] The Court has pored through all these filings and considers the various claims that have been raised in all of his motions.

Resto's principal claim is that he was denied his Sixth Amendment right to effective assistance at trial, at sentencing, on appeal, and by the attorney who first filed the present petition. The Sixth Amendment guarantees a criminal defendant effective assistance of counsel in order to protect that defendant's fundamental right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 684–85, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). The Constitution does not guarantee a defendant a perfect or successful defense; rather, he is guaranteed "'reasonably effective assistance under the circumstances then obtaining.'" *Lema v. United States*, 987 F.2d 48, 51 (1st Cir.1993) (quoting *United States v. Natanel*, 938 F.2d 302, 309–10 (1st Cir.1991)). A court should evaluate the challenged conduct not with the benefit of hindsight, but from the attorney's perspective at the time of the trial. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Lema*, 987 F.2d at 51.

A petitioner must show, first, that his counsel's performance was deficient and, second, that this deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064;

---

1. Crim. no. 96–075(HL), docket no. 54.

2. Crim. no. 96–075(HL), docket no. 153.

3. Crim. no. 96–075(HL), docket no. 184.

4. Civil no. 00–1760(HL), docket nos. 6, 9, & 15.

5. Civil no. 00–1760(HL), docket nos. 16 & 18.

6. Civil no. 00–1760(HL), docket nos. 4, 5, 11, 12, & 13.

*Bucuvalas v. United States,* 98 F.3d 652, 658 (1st Cir.1996); *Bonneau v. United States,* 961 F.2d 17, 20 (1st Cir.1992). The petitioner has the burden of proving both prongs of this test, and the burden is a heavy one. *Bucuvalas,* 98 F.3d at 658. An attorney's performance is deficient if it is " 'so inferior as to be objectively unreasonable.' " *Id.* (quoting *United States v. McGill,* 11 F.3d 223, 226 (1st Cir.1993)). The petitioner must show that there is a reasonable probability that, but for his counsel's deficient performance, the outcome would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *United States v. Alston,* 112 F.3d 32, 36–37 (1st Cir.1997). He must show that his counsel's errors were so serious that they deprived him of a fair trial and a reliable result. *United States v. Ademaj,* 170 F.3d 58, 64 (1st Cir.1999). There is a strong presumption that the counsel's performance comes within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. The defendant must overcome the presumption that his counsel's performance could " 'be considered sound trial strategy.' " *Id.* (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). The court's scrutiny of the attorney's performance must be highly deferential. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

#### 1. Alibi issue

Prior to trial, Resto's counsel filed a motion informing the Court and the Government of the alibi defense that he planned to present at trial. His alibi was that during the night of the two carjackings, he was at his girlfriend's apartment watching television from approximately

7:00 p.m. to 10:30 p.m. He left the apartment briefly around 8:45 p.m. to check a Honda automobile that had been brought to his girlfriend's apartment complex.[7] When he left his girlfriend's apartment to walk home, he ran into his mother, and the two of them walked home together. He got home at approximately 10:45 p.m. and did not leave for the rest of the evening. His motion stated that his girlfriend, her grandmother, his mother, his brother, and his father would all testify as to the veracity of this alibi.[8] During the trial, however, his counsel informed the Court that he would not be presenting the alibi defense because his investigation of it revealed that the witnesses to be presented in support of the defense would be committing perjury.[9]

In his filings, Resto makes much of this action taken by his attorney. Resto claims that his alibi was legitimate, that his witnesses were not going to lie under oath, that his attorney should have allowed them to testify, and that this action by his attorney constituted ineffective assistance. The Court will assume that the listed witnesses were, as Resto claims, going to testify truthfully as to the version of events described in his alibi motion. In support of his section 2255 petition, Resto has submitted the affidavits of his girlfriend and her mother which substantially coincide with this version.[10]

■ Notwithstanding these supporting affidavits and the Court's assumption as to the testimony of the other witnesses, the refusal by Resto's counsel's to present them was not a deficient or prejudicial performance. The Court makes this conclusion due to the fact that, at trial, Resto's attorney *did* present evidence of an

---

7. The second carjacking for which Resto was charged involved a Honda.

8. Crim. no. 96–075(HL), docket no. 127.

9. Crim. no. 96–075(HL), docket no. 196, at 3–6.

10. Civil no. 00–1670(HL), docket no. 23, exhibits B & C.

alibi. Resto's brother Angelo testified on his behalf that on the night in question he was outside the complex where Resto's girlfriend lived; that Resto came down to look at a Honda; and that after looking at it, Resto went back to his girlfriend's apartment.[11] Furthermore, Omar Claudio, one of Resto's co-defendants, also testified in his behalf. Claudio had earlier plead guilty and had admitted to shooting the victim during the second, fatal carjacking. In his testimony, Claudio stated that Resto did not participate in either of the carjackings.[12] And Resto himself testified that during the time of the carjackings he was at his girlfriend's apartment, that he went downstairs once during the evening to look at a Honda that had been brought to the apartment complex, and that he did not participate in the carjackings.[13] The testimony of these three witnesses is wholly consistent with the alibi presented in Resto's motion and with the affidavits of his girlfriend and her mother. The testimony of the alibi witnesses who were not allowed to testify would have thus constituted cumulative evidence. *See* Fed.R.Evid. 403. As such, even if Resto's counsel had attempted to present these witnesses, it would have been well within the Court's discretion to exclude them as being cumulative. *See United States v. Cunan,* 152 F.3d 29, 36 (1st Cir.1998). Therefore, the failure by Resto's counsel to put them on the stand was not performance "so inferior as to be objectively unreasonable." *See Bucuvalas,* 98 F.3d at 658. Moreover, as the First Circuit noted in its opinion in Resto's direct appeal, the Government's case against Resto was a strong one. *See*

*Resto–Díaz,* 215 F.3d 1313, 2000 WL 308665, at *1. The Court concurs in this assessment. The case was so strong that even if these other witnesses had been allowed to testify, it is not reasonably probable that the verdict would have been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *Alston,* 112 F.3d at 36–37. Thus, Resto has failed to meet his burden with regard to this argument.

Resto makes two other arguments tangential to this alibi issue. One of these arguments is that his counsel's reason for declining to put on alibi witnesses was that they had criminal records. If this is true—and Resto does not deny it—such a reason would constitute sound trial strategy which a court should view in a deferential manner. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. It is not a reason which would constitute an inferior or objectively unreasonable performance.

■ A second argument by Resto is that his counsel told his brother Angelo to change his testimony. On cross examination, Angelo testified that he saw his brother come down to look at the car at between 10:30 and 11:00 at night.[14] In his 2255 petition, Resto has submitted an affidavit from Angelo testifying that the correct time was between 12:00 and 12:30 a.m., but that Resto's counsel convinced him to state that he saw his brother at this earlier hour.[15] In his testimony on cross examination, Resto stated that the incident actually took place around midnight.[16] Apparently Resto's argument on this point is that this discrepancy in the time, which he claimed arose because of

---

**11.** Crim. no. 96–075(HL), docket no. 196, at 53–56.

**12.** Crim. no. 96–075(HL), docket no. 196, at 12–14.

**13.** Crim. no. 96–075(HL), docket no. 196, at 57–59.

**14.** Crim. no. 96–075(HL), docket no. 196, at 56.

**15.** Civil no. 00–1760(HL), docket no. 23, exhibit A.

**16.** Crim. no. 96–075(HL), docket no. 196, at 60–61.

his counsel's nefarious behavior, denied him his right to a fair trial. The Court will assume that Resto's version regarding his brother's testimony is true. Furthermore, the Court will also make this assumption in conjunction with its earlier assumption that the witnesses listed in his alibi motion were going to testify truthfully as to the version of events described in the motion. Even under these two assumptions taken favorably toward Resto, his claim of ineffective assistance counsel fails for the following reasons. First, the discrepancy between Angelo's testimony and Resto's testimony regarding the time of this incident is a minor one: there is a difference of only an hour and a half. Second, as the Court mentioned above, the case against Resto was a strong one. Even if Angelo had testified that he saw Resto looking at the Honda around 12:00 or 12:30 a.m., and even if his other alibi witnesses had been allowed to testify, there is no reasonable probability that the verdict would have been different.

### 2. Alleged failure to investigate

■ Resto also alleges that his counsel failed to investigate, interview, and subpoena a number of potential witnesses. Counsel for a criminal defendant must make a reasonable investigation in the preparation of his case. *Kenley v. Armontrout,* 937 F.2d 1298, 1304 (8th Cir.1991). Counsel's assistance will be found to be ineffective if he has performed little or no investigation into the case. *Id.; Reyes–Vejerano v. United States,* 117 F.Supp.2d 103, 107 (D.P.R.2000). Generally, a finding of ineffective assistance will be based on a failure to investigate where the evidence which the investigation would have produced would have made the defendant's conviction nearly impossible. *Passos–Paternina v. United States,* 12 F.Supp.2d

231, 236 n. 4 (D.P.R.1998), *aff'd* 201 F.3d 428, 1999 WL 668522 (1st Cir.1999) (Table case).

■ In the present case, Resto asserts that his counsel failed to adequately interview Claudio "in depth," thereby failing to discover information that would have proved Resto's innocence.[17] Resto does not specify, however, what additional exculpatory information Claudio could have provided. At any rate, Claudio did testify at trial that Resto did not participate in the carjackings. This argument is unavailing.

■ Resto further alleges that his counsel failed to interview and investigate his girlfriend, her mother, and an unidentified "Rolo." It is not clear what additional evidence his girlfriend and her mother could have provided, other than the cumulative testimony regarding his alibi. There is no mention what exactly would have been the subject of Rolo's testimony. The failure to present them did not constitute ineffective assistance.

■ Resto also asserts that his counsel should have interviewed and subpoenaed "Aneudi" to establish that he (Resto) and Claudio were rivals and would never commit a carjacking together. However, Claudio and Resto did testify that they were rivals. Thus, this testimony by Aneudi would have been cumulative. Moreover, as Resto mentions in his brief, his counsel stated that he did not want to put Aneudi on the stand because he would have testified that Resto ran a drug point.[18] If it is true that Aneudi would have so testified—and Resto provides no reason for the Court to doubt his counsel's reason—the decision not to put him on the stand was the type of sound trial strategy

---

**17.** Civil no. 00–1760(HL), docket no. 11, at 2.

**18.** Civil no. 00–1760(HL), docket no. 11, at 2.

for counsel to make. It certainly does not rise to ineffective assistance.

Resto's last argument regarding a failure to investigate is that his counsel failed to investigate the crime scene. Resto does not offer any indication how the outcome of his trial would have been different had his counsel done so. This argument is also denied.

### 3. Selection of the jurors

Resto also argues that his counsel performed deficiently during the selection of the jurors for his trial. Three of the members of the jury pool answered in the affirmative to the question of whether they or a family member had been a victim of a carjacking.[19] Of these three individuals, one of them was selected to serve on the jury.[20] This juror's mother had been carjacked approximately five years prior to the trial.[21] Resto argues that this juror was prejudiced and his counsel's failure to use a challenge to strike this juror constituted ineffective assistance.

■■■ The problem with this argument is that Resto offers no proof that the juror in question was in fact biased. During the Court's voir dire of the jury pool, this juror did not state that he had any preconceived opinion of the cases or that he had any reason to be prejudiced in the case.[22] The Court instructed the jurors that Resto was entitled to a presumption of innocence; that anything they may have seen or heard outside the courtroom should not be considered; that they should not form an opinion as to guilt or innocence until all the evidence had been presented; that their verdict should be based solely on the evidence, not prejudice or sympathy; and that they should impartially consider the evidence.[23] There is a presumption that jurors follow the instructions they are given. *Richardson v. Marsh*, 481 U.S. 200, 206, 211, 107 S.Ct. 1702, 1707, 1709, 95 L.Ed.2d 176 (1987); *Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 53 (1st Cir.1998); *United States v. Magana*, 127 F.3d 1, 6 (1st Cir. 1997). Thus, the Court presumes that the juror in Resto's panel whose mother had been carjacked five years earlier followed the Court's instructions and deliberated impartially. Resto offers nothing, other than conjecture and speculation, to counter this presumption. That is not sufficient. The Court denies this argument.

### 4. The intent issue

■■■ Resto alleges in his filings that Claudio did not intend to shoot and kill Eliezer Ortiz, the victim of the second carjacking. He claims that during the carjacking, Claudio was pointing his gun at Ortiz; that Claudio pounded on the roof of Ortiz's car with the gun; and that the gun then accidentally went off, ricocheted off the roof of the car and struck Ortiz. Therefore, he argues, the intent element of the carjacking element was not met. Resto claims that his attorney was ineffective for not pointing out this issue and that the

---

19. Crim. no. 96–075(HL), docket no. 193, at 9.

20. Crim. no. 96–075(HL), docket no. 193, at 42–43; docket no. 146. Originally two of the potential jurors who had a carjacking experience were selected for the jury. However, the second juror—juror number 23—was made an alternate. Crim. no. 96–075(HL), docket no. 193, at 56–57; docket no. 146. After the parties had presented their evidence, he was excused and did not participate in the deliberations. Crim. no. 96–075(HL), docket no. 197, at 44–45; docket no. 151.

21. Crim. no. 96–075(HL), docket no. 193, at 9.

22. Crim. no. 96–075(HL), docket no. 193, at 11, 14.

23. Crim. no. 96–075(HL), docket no. 193, at 45, 50, 52; docket no. 197, at 28–30, 42.

Government engaged in misconduct because its agents and prosecutors knew that the shooting was an accident. This argument has a number of flaws, all of them fatal. First, Resto has adduced no evidence to support his assertion of an accidental shooting. He has submitted an affidavit by Claudio, but it nowhere makes a claim that the shooting was an accident.[24] Second, at trial and in his change of plea hearing, Claudio admitted that he shot the victim; he did not claim that it was accidental.[25]

The third flaw in this theory is that even if the shooting were an accident—and there is no evidence to suggest that it was—the Government met its burden of establishing the requisite intent element. The carjacking statute, 18 U.S.C. § 2119, is a specific intent crime. Under the statute, the Government has the burden of establishing that a defendant intended to cause death or serious bodily injury. *United States v. Otero–Mendez*, 273 F.3d 46, 51 (1st Cir.2001). This does not require the Government to prove that the defendant had an unconditional intent to kill or harm in all events; it may also meet its burden by establishing that the defendant had "conditional intent." *Holloway v. United States*, 526 U.S. 1, 3, 119 S.Ct. 966, 968, 143 L.Ed.2d 1 (1999). A defendant has conditional intent if he has the intent to cause death or serious bodily harm, if necessary, to commit a carjacking. *United States v. Gandia–Maysonet*, 227 F.3d 1, 4 (1st Cir.2000).

In the present case, there was evidence that Claudio and Resto pulled their car up alongside the vehicle in which Ortiz and his wife were riding; Claudio pulled two guns on them and told them they were being held up; Claudio told Ortiz's wife to get out of the car; and Resto yelled at Claudio to shoot and kill Ortiz.[26] This evidence is sufficient to establish the requisite intent of section 2119. *See, e.g., Otero–Mendez*, 273 F.3d at 52; *United States v. Fulford*, 267 F.3d 1241, 1244 (11th Cir.2001); *United States v. Adams*, 265 F.3d 420, 424–25 (6th Cir. 2001); *United States v. Wright*, 246 F.3d 1123, 1127–28 (8th Cir.2001); *United States v. Jones*, 188 F.3d 773, 777 (7th Cir.1999). Even if there were any evidence that the shooting was accidental—and the Court reiterates that there is none—the outcome would be the same. The element of proof of intent to cause death or serious bodily harm is distinct from the element that death actually resulted. *United States v. Perez–Montañez*, 202 F.3d 434, 441–42 (1st Cir.2000). The evidence was sufficient to allow a reasonable jury to find that Claudio had conditional intent to cause death or serious bodily injury. Therefore, the Court denies this argument.

### 5. Claims of failure to provide discovery

Resto also argues that the Government failed to provide discovery that he had requested, including ballistics reports that would support his ricochet theory.[27] The Government has stated that during the criminal proceedings, it turned over all discovery to Resto's counsel.[28] It is un-

---

24. Civil no. 00–1760(HL), docket no. 5, exhibit A.

25. Crim. no. 96–075(HL), docket no. 144, at 20–24; docket no. 196, at 12, 22.

26. Crim. no. 96–075(HL), docket no. 194, at 31–34.

27. Civil no. 00–1760(HL), docket no. 12, at 5, 17.

28. Civil no. 00–1760(HL), docket no. 10.

clear from Resto's motions what discovery, other than the ballistics reports, he is claiming was not disclosed to him.

■ The Constitution is not violated every time that the Government fails to disclose exculpatory evidence. *Kyles v. Whitley,* 514 U.S. 419, 436–37, 115 S.Ct. 1555, 1567, 131 L.Ed.2d 490 (1995). Exculpatory evidence is material, and a constitutional error results from its suppression, " 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Id.* at 433–34, 115 S.Ct. at 1565 (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)); *Mastracchio v. Vose,* 274 F.3d 590, 600–02 (1st Cir.2001); *Gilday v. Callahan,* 59 F.3d 257, 267 (1st Cir.1995). A reasonable probability of a different result is shown when the Government's suppression of evidence " 'undermines confidence in the outcome of the trial.' " *Kyles,* 514 U.S. at 434, 115 S.Ct. at 1566 (quoting *Bagley,* 473 U.S. at 678, 105 S.Ct. at 3381). The question is whether, in the absence of the suppressed evidence, the defendant received a trial that is "worthy of confidence." *Kyles,* 514 U.S. at 434, 115 S.Ct. at 1566.

■ In the present case, even if there were ballistics reports showing that there had been a ricochet and even if the Government failed to disclose it to him, no constitutional violation would have resulted. Such evidence would not have been material. As discussed in part 4. above, whether or not the shot that killed Ortiz was accidental or a ricochet has not bearing on the intent element of section 2119. Resto offers no specifics as to any other

alleged failures to provide discovery. Accordingly, this argument is also denied.

*6. Fingerprint issue*

■ Resto also alleges that his attorney failed to object to the Government's fingerprint expert and failed to retain his own expert. The Government's expert testified that he found Resto's fingerprints on exhibits 7, 8, and 12, which were documents and a part from Eliezer Ortiz's car.[29] Resto claims in his 2255 petition that those were not his prints. He offers no evidence, however, to support this claim. More importantly, the fact that his fingerprints were on these items is completely consistent with his own testimony. At trial, Resto testified that on the night of the carjackings he was at his girlfriend's apartment when someone brought Ortiz's vehicle by his girlfriend's apartment complex and that he got inside the car to examine it and check the air conditioning.[30] Resto admitted that he was inside Ortiz's vehicle. Thus, it would not be surprising that his fingerprints were found on items within the car. This argument is also denied.

*7. Results in death*

Resto raises a number of arguments regarding the cause of Ortiz's death. One of these arguments is that the Government failed to prove that Ortiz died as a result of the shooting. This argument is completely frivolous. The testimony of Ortiz's wife, his brother-in-law, and a forensic pathologist were sufficient to allow a reasonable jury to infer that he died from Claudio's shooting.[31]

---

**29.** Crim. no. 96–075(HL), docket no. 195, at 43–49; docket no. 194, at 44–46.

**30.** Crim. no. 96–075(HL), docket no. 196, at 58–62.

**31.** Crim. no. 96–075(HL), docket no. 194, at 30–39, 55–58; docket no. 195, at 31–37.

■ Resto also argues that his counsel should have argued, pursuant to the Supreme Court's ruling in *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), that the provision of 18 U.S.C. § 2119(3) providing for a sentence of up to life imprisonment if the carjacking results in death was an element of the offense. The *Jones* decision came out in March 1999. Resto was tried and sentenced in 1997 and 1998. At the time, the rule in the First Circuit was that the provisions of section 2119(3) were sentencing factors, not elements of the offense. *See United States v. Mojica–Baez,* 229 F.3d 292, 310 n. 12 (1st Cir.2000); *United States v. Rivera–Gomez,* 67 F.3d 993, 1000 (1st Cir.1995). Thus, it was not ineffective assistance for Resto's counsel not to make an argument that would have run counter to clear First Circuit case law. *See Vieux v. Pepe,* 184 F.3d 59, 64 (1st Cir.1999) (A counsel's performance is not deficient for failing to pursue a futile tactic).

■ Resto also argues that the Court should retroactively apply *Jones* to his case. The holding in *Jones* is not retroactive to cases on collateral review. *Sustache–Rivera v. United States,* 221 F.3d 8, 15 (1st Cir.2000); *Rodriguez Rodriguez v. United States,* 130 F.Supp.2d 313, 316 (D.P.R.2000). Thus, the Court denies this argument.

### 8. Interstate commerce issue

Resto also argues that the vehicles involved in the two carjackings did not have an effect on interstate commerce. To meet the jurisdictional element of section 2119, the Government must prove that the vehicle was, at some time, moved in interstate commerce. *Otero–Mendez,* 273 F.3d

at 51. Here, the Government presented evidence to meet its burden on this element.[32] In making his arguments, Resto invokes the Supreme Court's holding in *United States v. Morrison,* 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000). The First Circuit's recent opinion in *Otero–Mendez,* however, made no mention of a change in the interstate commerce element of the carjacking statute as a result of the *Morrison* case. And at least one other circuit court has held that the holding in *Morrison* has no bearing on the interstate commerce element of section 2119. *See United States v. Taylor,* 226 F.3d 593, 599 (7th Cir.2000). Accordingly, the Court denies this argument.

### 9. Testimony of Eduardo Rodriguez

Eduardo Rodriguez, another co-defendant, testified against Resto at trial. On cross-examination, Rodriguez stated that he saw Resto driving one of the carjacked vehicles on February 16, 1996.[33] Resto claims that police records showed that by February 14, that vehicle was in police custody. He further asserts that he asked his counsel to offer into evidence the police reports indicating the date that the police took custody of the vehicle, but that his counsel refused to do so. Resto claims that this constituted ineffective assistance. He also claims that the Government engaged in misconduct when it presented the perjured testimony of Rodriguez.

■ In his closing, Resto's counsel did, in an attempt to impeach Rodriguez, point out to the jury that by February 16, the vehicle had already been seized by the police.[34] His counsel also attacked Rodriguez' credibility throughout his closing.[35]

---

32. Crim. no. 96–075(HL), docket no. 195, at 52.

33. Crim. no. 96–075(HL), docket no. 195, at 27–28.

34. Crim. no. 96–075(HL), docket no. 197, at 19–20.

35. Crim. no. 96–075(HL), docket no. 197, at 15–19, 23.

Additionally, he vigorously cross-examined Rodriguez.[36] Resto's counsel may not have confronted Rodriguez's testimony in the exact manner that Resto wanted him to. Nevertheless, his counsel did attack Rodriguez's testimony, and the Court cannot conclude that his means of doing so constituted ineffective assistance.

### 10. Other claims

Resto makes a number of claims. Many of them are frivolous; none of them are meritorious. The Court disposes of them summarily. One of these arguments is that the Government engaged in misconduct when it allowed Vanessa Nieves, Ortiz's wife, to testify that Claudio intentionally shot Ortiz, that Claudio grabbed her by the wrist when he got into her car, and that he dragged her down the street while he was driving the car away. Even if this testimony were false—and there is no evidence that it is—it would have had no bearing on the outcome of the trial. These putative falsehoods were immaterial to the Government's case against Resto.

He claims that his counsel should have challenged Rodriguez's testimony based on *United States v. Singleton,* 144 F.3d 1343 (10th Cir.1998). The Tenth Circuit, en banc, vacated this decision, *id.* at 1361–62, and subsequently reversed it, 165 F.3d 1297 (10th Cir.1999). The First Circuit has expressly rejected the reasoning of the original *Singleton* opinion. *See United States v. Lara,* 181 F.3d 183, 197–98 (1st Cir.1999). This argument is denied.

He claims that his conviction for violations of both 18 U.S.C. § 2119 and 18 U.S.C. § 924(c)(1)(3) violated the Double Jeopardy Clause. This argument has been considered and rejected by the First Circuit. *See United States v. Gonzalez–Arimont,* 268 F.3d 8, 13 (1st Cir.2001); *United States v. Shea,* 211 F.3d 658, 673 (1st Cir.2000); *United States v. Centeno–Torres,* 50 F.3d 84, 85 (1st Cir.1995).

He claims that his conviction, based on an amendment to section 2119 that took effect October 1, 1996, violated the Ex Post Facto Clause. The carjackings in his criminal case occurred in February 1996. He was tried in October 1997. The 1996 amendment clarified that sexual abuse and aggravated sexual abuse constituted serious bodily injury. *See* Pub.L. No. 104–217, 110 Stat. 3020. It had no bearing on Resto's case. Moreover, neither the second superseding indictment nor the Court's instructions to the jury regarding the elements of the offense mentioned this amendment.[37]

He argues that his counsel at sentencing was ineffective for failing to challenge the verdict against him and for failing to challenge his life sentence. This argument is completely contradicted by the record. His attorney filed motions for a downward departure, argued that Resto had a minor role in the offense, and attempted to present evidence at his sentencing hearing that he was innocent.[38]

He claims that the Government improperly presented the hearsay testimony of Agent Francisco Ng. This issue was resolved—unfavorably to Resto—on direct appeal. *See Resto–Diaz,* 215 F.3d 1313, 2000 WL 308665, at * 1. A petitioner may not raise in a section 2255 claim an issue that was resolved on direct appeal. *Murchu v. United States,* 926 F.2d 50, 55 (1st Cir.1991).

---

**36.** Crim. no. 96–075(HL), docket no. 195, at 7–29.

**37.** Crim. no. 96–075(HL), docket no. 54; docket no. 197, at 35–36.

**38.** Crim. no. 96–075(HL), docket nos. 173–175, 202.

He alleges that the weapon that Claudio used to shoot Ortiz was "planted" on him. Even if this were true, this fact would have no bearing on the outcome of this case. Claudio admitted to shooting Ortiz. The fact that the gun he used may have belonged to someone else is immaterial.

Resto claims that his counsel told Claudio to try to make the jury think he was "ruthless." There is no evidence that his counsel did in fact say this. Nor is there evidence that Claudio did in fact try to give the jury such an impression. At any rate, it is unclear how this would have prejudiced Resto.

He claims that his counsel on appeal failed to adequately investigate his case and choose which topics to raise on appeal. He does not specify, however, which topics or arguments his appellate counsel should have raised. To the extent he is claiming that his appellate counsel should have raised the arguments that his trial counsel failed to raise, the Court denies this claim of ineffective assistance for the same reasons that it denied Resto's claims that his trial counsel was ineffective.

■■■ Resto also claims that the attorney who initially filed this section 2255 petition was ineffective. A criminal defendant has a constitutional right to counsel only through his first appeal of right. *Kitchen v. United States*, 227 F.3d 1014, 1018 (7th Cir.2000). There is no constitutional right to counsel in a section 2255 proceeding. *Sanchez v. United States*, 50 F.3d 1448, 1456 (9th Cir.1995); *Dyer v. United States*, 23 F.3d 1421, 1423 (8th Cir.1994); *see also Coleman v. Thompson,* 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991) (No right to counsel in a state post-conviction proceeding). Because Resto had no constitutional right to counsel in the filing of his section 2255 petition, he cannot claim that he was denied effective assistance of counsel at this level. *See Wainwright v. Torna,* 455 U.S.

586, 587–88, 102 S.Ct. 1300, 1301, 71 L.Ed.2d 475 (1982).

Lastly, Resto claims that the cumulative effect of all these alleged errors makes relief warranted. As discussed above, none of his individual claims present meritorious arguments. Even if the Court were to consider all Resto's arguments as a whole and, where not contradicted by the record, assume that his allegations are true, he would not be entitled to relief under section 2255. The Government's case against him was too strong. His litany of perceived errors neither establishes that it was reasonably probable that the verdict would have been different had these putative errors not occurred, nor otherwise shows that there was some fundamental unfairness in his trial.

### 11. Request for an evidentiary hearing

■■■ Resto moves the Court to hold an evidentiary hearing on his petition. A section 2255 petitioner is not entitled to an evidentiary hearing as a matter of right. *David v. United States,* 134 F.3d 470, 477 (1st Cir.1998). A district court may deny such a request if it is plainly apparent from the face of petitioner's pleadings that he is not entitled to relief; if the allegations, even if true, would not warrant relief; if the allegations are merely "conclusory prognostications and perfervid rhetoric;" or if the petitioner's allegations are contradicted by the record or contain inherently incredible allegations. *Id.; United States v. LaBonte,* 70 F.3d 1396, 1412–13 (1st Cir.1995), *rev'd on other grounds,* 520 U.S. 751, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997); *McGill,* 11 F.3d at 225–26. The petitioner has the burden of showing that a hearing is necessary in his case. *McGill,* 11 F.3d at 225.

In the present case, the Court has discounted those allegations by Resto which are discounted by the record. These alle-

gations include his claims regarding the performance of his counsel in handling the testimony of Eduardo Rodríguez; the cause of death issue; the interstate commerce issue; the Ex Post Facto claim; and the performance of his counsel at sentencing. The Court also discounts his arguments which are plainly meritless. These arguments include the intent issue; the *Singleton* issue; the Double Jeopardy claim; the argument regarding Agent Ng's hearsay testimony; the planted weapon issue; the performance of his counsel on appeal; and the performance of his attorney who first filed his section 2255 petition. The Court considers to be no more than conclusory prognostications and perfervid rhetoric Resto's allegations regarding his counsel's failure to investigate; the juror selection issue; the *Brady* issue; the fingerprint issue; the testimony of Vanessa Nieves; and his trial counsel's allegedly telling Claudio to appear to be "ruthless." The Court does assume to be true his allegations regarding the way in which his counsel handled his proposed alibi witnesses. However, as discussed above, even if these allegations are true, they are not sufficient to make out a claim that he was denied effective assistance of counsel. Accordingly, the Court denies the request for a hearing.

As a final note, the Court points out that Resto is represented by counsel. His current attorney made an appearance when his first counsel moved to withdraw. In the interim Resto, aided by a jailhouse lawyer, inundated the Court with many of the arguments discussed above. It is true that these arguments—most of which are frivolous—were submitted by Resto *pro se.* Resto's counsel of record, however, must accept some responsibility for these claims. Once she made an appearance, she should have reviewed these filings and moved the Court to disregard, at the very least, those that were most obviously frivolous. Instead, she did nothing. Resto's counsel would do well to review and ponder Model Rule of Professional Conduct 3.1, which forbids an attorney from bringing frivolous claims. These frivolous claims serve little purpose—other than to waste limited judicial resources. The Court admonishes Resto's counsel for her lack of diligence in this matter.

WHEREFORE, the Court denies Resto' section 2255 petition. The Court also denies his request for an evidentiary hearing. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**